413 S.E.2d 414

**Lee D. BLAKE and Stacey Blake, Plaintiffs Below, Appellants,**

**v.**

**WENDY'S INTERNATIONAL, INC., Defendant Below, Appellee.**

**No. 20067.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 19, 1991.

Stephen P. Gast, Greiser, Schafer, Blumenstiel & Slane, Columbus, Ohio, Thomas M. Plymale, Garren, Plymale, Lycan & Pratt, Huntington, for appellants.

Gail Lea, Jackson & Kelly, Charleston, for appellee.

PER CURIAM.

The appellants, Lee D. Blake and Stacey Blake, appeal from an order of the Circuit Court of Cabell County granting summary judgment in favor of the appellee, Wendy's International, Inc. (hereinafter "Wendy's"). Mr. and Mrs. Blake contend that the circuit court erred in granting summary judgment on the grounds that sufficient evidence was presented to raise an issue for the jury that Wendy's had: (1) breached its duty to provide a reasonably safe place for Mr. Blake to work; (2) breached its duty to exercise ordinary care for the safety of Mr. Blake; (3) negligently interfered with the performance of Mr. Blake's work; and (4) failed to warn Mr. Blake of hidden dangers. We agree that summary judgment was improperly granted and we reverse the decision of the circuit court.

I

Mr. Blake was employed as a licensed electrician by the T & L Sign Company. When Mr. Blake arrived at work on the morning of January 16, 1987, he was instructed by his employer to go to the Wendy's restaurant at Fifth Avenue and Twenty-Second Street in Huntington, West Virginia, to repair the lighting of a sign. This restaurant is owned and operated by Wendy's.

When Mr. Blake arrived at the restaurant, he reported to the manager inside the restaurant and was told that the sign on the roof on the front of the building was not working properly. Mr. Blake asked the manager to show him the location of the circuit breaker box and to identify which breaker controlled the sign. Mr. Blake then went outside and moved his bucket truck to the west side of the restaurant to repair the sign. The district manager of Wendy's came out of the restaurant and informed Mr. Blake that he could not park his truck there because it was blocking the exit driveway. Mr. Blake then moved his truck to another location and repaired the sign.

After completing his repair work on the sign, he went inside the restaurant to have the store manager sign his work order. The store manager then asked Mr. Blake to check the fascia lighting around the building because those lights were not working properly. Mr. Blake agreed to repair those lights too. Mr. Blake used an aluminum extension ladder to reach the fascia lighting.[1]

When Mr. Blake climbed the ladder to the roof, he noticed a burn mark in the galvanized metal raceway, which indicated that there was a bad ballast. Mr. Blake removed the metal cover from the raceway, disconnected the bad ballast and replaced it. After replacing the ballast, however, only half of the fascia lighting on the build-

---

1. Mr. Blake testified in deposition that since the district manager had directed him not to block the "drive-thru" with his bucket truck, he used an aluminum extension ladder to reach the fascia lighting and the metal raceway above. He further testified in deposition that he moved his aluminum extension ladder around the building to gain access to the raceway because he did not want to walk through the one-half to one-inch of water which had accumulated on the roof of the restaurant.

ing was working. Mr. Blake then began moving his ladder around the building, taking off the raceways to locate the problem. After Mr. Blake worked on the fascia lighting for a while, all of the lights came on except one located on the east side of the building. So Mr. Blake moved his ladder to the east side of the building, climbed up and checked the light bulb to determine whether it needed to be replaced. Although he replaced the light bulb with a new one, the light still did not work. When Mr. Blake began to open that section of the raceway to determine why the light wasn't working, the wires which had been crammed into the raceway sprang out and hit his chest, causing him to fall from the ladder. Mr. Blake sustained serious injuries from the fall.

On June 1, 1988, Mr. and Mrs. Blake instituted a civil action against Wendy's seeking to recover damages for the injuries Mr. Blake sustained when he fell from the ladder at Wendy's. Mrs. Blake sued for loss of consortium. In its answer to the complaint, Wendy's denied liability and asserted that Mr. Blake had assumed the risks incident to the happening of the accident and that Mr. and Mrs. Blake were barred from recovering under the doctrine of assumption of risks. Depositions were taken and interrogatories were filed and answered during the discovery period.

Wendy's subsequently moved for summary judgment pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure.* The circuit court granted Wendy's motion for summary judgment by order entered on July 17, 1990, on the grounds that there was no genuine issue as to any material fact and that Wendy's was entitled to judgment as a matter of law. It is from that order that Mr. and Mrs. Blake now appeal.

## II

■ The dispositive issue in this case is whether the circuit court erred in granting summary judgment in favor of Wendy's. Summary judgment should not be granted when there is a genuine issue of material fact as we pointed out in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

We recently identified two distinct components of the parties' respective burdens of proof under Rule 56 of the West Virginia Rules of Civil Procedure in *Smith v. Buege,* 184 W.Va. 204, 209, 387 S.E.2d 109, 114 (1989) and *Crain v. Lightner,* 178 W.Va. 765, 769 n. 2, 364 S.E.2d 778, 782 n. 2 (1987): "an initial burden of production, which may shift to the nonmovant, and an ultimate burden of persuasion as to the nonexistence of a 'genuine issue,' which burden always remains on the movant."

■ It is clear from the record before us that Wendy's did not satisfy its ultimate burden of persuasion as to the nonexistence of a 'genuine issue.' As one of their theories for recovery in this case, the appellants have asserted that Wendy's breached its duty to provide a reasonably safe place for Mr. Blake to work and to exercise ordinary care for his safety. We recognized such a duty in syllabus point 2 of *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976): "The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent contractor the duty of providing him with a reasonably safe place in which to work and has the further duty to exercise ordinary care for the safety of such persons."

■ Moreover, we recognized in syllabus point 5 of *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964): "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them."

■ Wendy's contends that the "undisputed facts" establish that Wendy's neither

breached any duty to provide Mr. Blake with a reasonable safe place to work nor breached any duty to exercise ordinary care for Mr. Blake's safety.[2] However, there is conflicting testimony in the depositions which raises several questions which should be resolved by the jury. First, there is the issue of whether Wendy's, by the actions of its manager, effectively prevented Mr. Blake from using his bucket truck to work on the fascia lighting. Mr. Blake testified that the manager told him not to park his truck in the "drive-thru" while he worked on the sign because it would interfere with the restaurant's business and directed him to park his truck out on the street.[3] The district manager, Michael Albers, testified that he expressed his concern to Mr. Blake that the exit driveway not be blocked.[4] Mr. Blake testified that he interpreted Mr. Albers statement to mean that he could not use his bucket truck in the restaurant's parking lot and therefore used his ladder to work on the fascia lighting.

This testimony raises jury questions as to whether Wendy's prevented Mr. Blake from performing his job in a safe manner and whether Wendy's exercised ordinary care for his safety. The conflicting testimony of Mr. Blake, Mr. Albers and the electrical engineer, Ralph B. Hoffman, also goes to the issue of whether Wendy's provided Mr. Blake with a safe place in which to work.[5] Finally, the jury must also resolve the question of whether Wendy's exercised control over any aspects of Mr. Blake's work.

Wendy's also argues that Mr. Blake assumed the risk involved and that Wendy's was not under any duty to protect him "from risks arising from defects or hazards which were part of the very work he was hired to perform." [6] Mr. Blake maintains that, although he is a qualified electrician, he would have no way of knowing that electrical wires had been crammed into a raceway and would cause him to be thrown from a ladder.

We discussed the defense of assumption of risk at great length recently in *King v. Kayak Manufacturing Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989). We explained that our assumption of risk doctrine requires actual knowledge of the dangerous condition.[7] Furthermore, we stated that "under a comparative assumption of risk system, the defense of assumption of risk, if established, no longer operates as a complete bar to the plaintiff's recovery. Instead, the plaintiff's degree of fault arising from the assumption of risk is determined

2. Wendy's relies on *Peneschi v. National Steel Corp.*, 170 W.Va. 511, 295 S.E.2d 1 (1982) in support of its argument that Wendy's owed no actionable duty to Mr. Blake. In *Peneschi*, we held that an employee of an independent contractor who has accepted employment under hazardous conditions has assumed the risk and is barred from recovery against the employer of the independent contractor on a strict liability theory. We point out, therefore, that under the facts before us, Wendy's reliance on *Peneschi* is misplaced, because this is not a strict liability case.

3. Mr. Blake testified that "there was still plenty of room that the vehicles could still get around me and get out the exit. So I didn't have the whole parking lot blocked."

4. Mr. Albers also testified at deposition that the truck "could not be allowed to stay there during business hours." Mr. Albers further testified that he never told Mr. Blake where to put his truck after that conversation.

5. Mr. Blake testified at deposition that he was unable to work on the fascia lighting from the roof of the restaurant because there was approximately one inch of water which had accumulated, thus making it dangerous to work with electricity. Mr. Hoffman also testified that it would have been unsafe for Mr. Blake to perform his job from the roof due to the accumulation of water.

6. Wendy's contends that the manager's statement to Mr. Blake that the fascia lighting was not working and had not been working for a couple of months was sufficient to discharge any duty of Wendy's to warn Mr. Blake of any "hidden" dangers in connection with the sign and the fascia lighting.

7. More recently we explicitly held in syllabus point 5 of *Desco Corporation v. Harry W. Trushel Construction Co.*, 186 W.Va. 430, 413 S.E.2d 85 (1991): "The doctrine of assumed or incurred risk is based upon the existence of a factual situation in which the act of the defendant alone creates the danger and causes the injury and the plaintiff voluntarily exposes himself to the danger with full knowledge and appreciation of its existence."

by the jury, and the total award of damages is then diminished accordingly." *Id.* 182 W.Va. at 281, 387 S.E.2d at 516.

We question Wendy's assertion that Mr. Blake had full knowledge and appreciation of the dangerous condition of the wires which had been crammed into the raceway.[8] However, Wendy's would not be precluded at trial from presenting evidence regarding the assumption of risk defense and if assumption of risk is shown, the jury instructions should only require that Mr. Blake's degree of fault be ascertained. *Kayak,* 182 W.Va. at 282, 387 S.E.2d at 517.[9]

Thus, for the reasons set forth herein, we conclude that the circuit court erred in granting summary judgment in favor of Wendy's. The order of the circuit court is therefore reversed and this case is remanded for trial.

Reversed and remanded.

BROTHERTON, J., dissents and would affirm the trial judge.

---

8. Wendy's argues that "the dangerous condition that was the proximate cause of Mr. Blake's fall was not the electrical wiring inside the raceway, but his improper use of the aluminum extension ladder against the curved metal roof of the Wendy's restaurant."

9. See footnote 17 of *Kayak* for a proposed comparative assumption of risk instruction.