447 S.E.2d 563

**Doris JOHNSON, Individually and as a Parent and Natural Guardian of Michael Johnson, a Minor, Plaintiff Below, Appellant,**

v.

**Marvin MAYS, Individually and as a Parent and Natural Guardian of Tracy Mays and Shane Mays; and Loudermilk Services, Inc., a West Virginia Corporation, Defendants Below, Appellees.**

**No. 21959.**

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1994.

Decided July 18, 1994.

Dissenting Opinion of Justice Neely July 19, 1994.

---

Donald R. Jarrell, Wayne, for appellant.

William L. Mundy, Renatha S. Garner, Mundy & Adkins, Huntington, for appellee, Marvin Mays.

Mark E. Garren, Huntington, for appellee, Loudermilk Services, Inc.

## PER CURIAM:

This case is before this Court upon the May 12 and 14, 1993, orders of the Circuit Court of Cabell County, West Virginia, in which the circuit court granted the appellees', Marvin, Shane and Tracy Mays and Loudermilk Services, Inc. (hereinafter "Loudermilk"), motions for summary judgment. The appellant, Doris Johnson, asks that this Court reverse the orders of the circuit court. For the reasons stated below, the decision of the circuit court is affirmed, in part, reversed, in part, and remanded.

### I.

On the morning of January 26, 1990, the brothers, Shane and Tracy Mays, were dropped off at their high school by their mother, but rather than going to school that day they decided they were going to "skip" school and stay home. The appellant's son, Michael Johnson, and three other boys also decided to miss school that day and met Shane and Tracy at the Mays' residence.

Neither Mr. nor Mrs. Mays was home, and Mr. Mays claimed that he was unaware that his sons were "skipping" school and present at his home that day. Nevertheless, the boys then decided they wanted to become intoxicated by "huffing" gasoline. Subsequently, Michael Johnson and two other boys drove to Loudermilk's to purchase the gasoline. They parked their vehicle behind Loudermilk's. Michael Johnson approached a Loudermilk employee with a Pepsi can, and he purchased a small amount of gasoline that was put in the Pepsi can. When Michael Johnson returned to the vehicle and his waiting friends, the boys informed him that it was the wrong kind of gasoline and told him to go back and get the right kind. Michael Johnson proceeded back to Loudermilk's and once again purchased a nickel's worth of gasoline in the Pepsi can.

The three boys then returned to the Mays' residence. The gasoline was poured into two plastic cups in order to facilitate the "huffing" process. The boys proceeded to "huff" the gasoline. The parties are in dispute as to how Michael Johnson was actually injured and burned by the gasoline. It appears, however, from the record that Michael Johnson went to the bathroom carrying a plastic cup of gasoline and cigarettes. The gasoline fumes were either ignited by the bathroom heater or a lit cigarette.

Michael Johnson received medical attention. At the Mays' residence, Shane and Tracy Mays attempted to clean up the rubble in the bathroom. Thereafter, Mr. Mays claimed that he continued to clean up and repair the bathroom without any knowledge that Michael Johnson had been injured.

Following the filing of this action and discovery proceedings, the appellees, the Mays and Loudermilk, filed motions for summary judgment. The circuit court found that no genuine issue as to any material fact existed and granted the appellees' motions. It is from this finding of the circuit court that the appellant appeals to this Court.

### II.

■ Procedural mechanisms, at times, can be efficient and effective tools in resolving cases. We have recognized on previous occasions that summary judgment is a useful mechanism to resolve controversies where there is no real dispute as to the facts or the law. *See Sartin by and through Sartin v. Evans*, 186 W.Va. 717, 719, 414 S.E.2d 874, 876 (1991); *Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 207 S.E.2d 191 (1974). With respect to summary judgments, this Court has consistently reasoned that " '[a] party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances.' *Aetna Casualty & Sur. Co.*, 148 W.Va. at 171, 133 S.E.2d at 777 (citing 3 Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Section 1234][.]" *Sartin*, 186 W.Va. at 719, 414 S.E.2d at 876. When this Court is reviewing

a summary judgment ruling, we construe the facts in the light most favorable to the party against whom summary judgment is granted. *Id.* With these important standards and principles in mind, we turn to the arguments presented on behalf of the parties.

On appeal, the appellant contends that material issues of fact remain in dispute and inquiry is warranted in order to clarify and determine the appropriate application of the law. For instance, the appellant asserts the following issues and questions remain unresolved and unanswered: was there a duty owed by the appellees to Michael Johnson; was there a breach of that duty; what was the degree of care, if any, that was to be exercised by the appellees; and, what was the proximate cause of Michael Johnson's injuries.

■ The appellant relies upon syllabus point 1 of *Blake v. Wendy's International, Inc.,* 186 W.Va. 593, 413 S.E.2d 414 (1991) which states:

'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

The appellant submits that genuine issues of fact remain with respect to the appellees and Michael Johnson's injuries. Because questions regarding such issues as proximate cause and negligence remain unanswered, the appellant maintains that these questions should be resolved by a jury as stated in syllabus point 1 of *Waugh v. Traxler,* 186 W.Va. 355, 412 S.E.2d 756 (1991):

' " 'Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.' Syl. pt. 1, *Ratlief v. Yokum* [167 W.Va. 779], 280 S.E.2d 584 (W.Va.1981), *quoting* syl. pt. 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964)." Syllabus Point 6,

*McAllister v. Weirton Hosp. Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983).' Syl. Pt. 17, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990).

### A.

■ The appellant contends that material issues of fact remain with respect to the Mays and their actions or lack thereof regarding Michael Johnson's injuries. Specifically, the appellant argues that because Michael Johnson was a guest in the Mays' home, the Mays owed a duty of care to Michael Johnson and that duty was breached. The appellant suggests that Mr. Mays is guilty of failing to supervise his sons and was aware of his sons' truancy from school and their involvement in committing troublesome acts in the past, and therefore, he should have reasonably foreseen the events that occurred at the Mays' residence on the day that Michael Johnson was injured.

The Mays rebut the appellant's contentions with this Court's interpretation of Rule 56 of the *W.Va.R.Civ.P.* as stated in *Crain v. Lightner,* 178 W.Va. 765, 769, 364 S.E.2d 778, 782 (1987): "[I]f, after adequate time for discovery and upon motion, the record contains no evidence to support an essential element of the nonmovant's case, there is no 'genuine issue' as to material fact, ... [then] the moving party is entitled to a summary judgment." (citation omitted). This premise, as the Mays' contend, represents the circumstances in this case.

The Mays maintain that the appellant has failed to produce any evidence that the Mays were negligent and that their negligence, if any, was the proximate cause of Michael Johnson's injuries. Mr. Mays stated in his deposition that he did not know nor did he have any reason to know what was going on in his home that day or that such events would be foreseeable. Mr. Mays, however, admitted to knowing that on previous occasions his sons have "skipped" school or exhibited troublesome behavior in the past, but he stated that he has never known them to inhale gasoline or any other similar substance.

The Mays submit that Michael Johnson was a social guest or a licensee [1] in the Mays' home. The creation of a license and the subsequent duty owed to a licensee was set forth by this Court in the syllabus of *Hamilton v. Brown*, 157 W.Va. 910, 207 S.E.2d 923 (1974):

Mere permissive use of the premises, by express or implied authority ordinarily creates only a license, and as to a licensee, the law does not impose upon the owner of the property an obligation to provide against dangers which arise out of the existing condition of the premises inasmuch as the licensee goes upon the premises subject to all the dangers attending such conditions.

*See also Miller v. Monongahela Power Co.*, 184 W.Va. 663, 667–68, 403 S.E.2d 406, 410–11 (1991). However, the Mays argue that Marvin, Shane or Tracy Mays, or any condition in the Mays' home neither caused nor contributed to the injuries sustained by Michael Johnson. The Mays submit that the record clearly supports the fact that Michael Johnson was in the bathroom alone and there is nothing to suggest that the Mays had done anything to initiate the activity or resulting conduct exhibited by Michael Johnson.

To the contrary, the Mays submit that the evidence supports the fact that it was Michael Johnson who created the dangerous conditions which ultimately caused his injuries. There were statements by the boys, other than Michael Johnson, which indicated that upon arriving at the Mays' home, Michael Johnson poured the gasoline into two plastic cups and everyone "huffed" the gasoline. Shane and Tracy testified that Michael Johnson then passed out cigarettes to everyone. Thereafter, one of the other boys present stated that he saw Michael Johnson proceed into the bathroom carrying a lit cigarette and a plastic container holding gasoline. It was after the passage of quite a few minutes that the boys heard Michael Johnson screaming for help from the bathroom, as attested to by Tracy Mays.

We find the Mays' contentions persuasive. The appellant argues that Mr. Mays failed to adequately supervise his sons, but the in-

verse can be said of Doris Johnson and the supervision or lack thereof regarding her son Michael. Nevertheless, it is fair to conclude that the events which took place that day in the Mays' home could not have been foreseen by the Mays. It is also clear that Michael Johnson was a guest and licensee at the Mays' home that day. While it is clear that the Mays owed a duty to Michael Johnson, the record supports the finding that the Mays did not breach the duty owed to Michael Johnson as a licensee.

We believe that the evidence supports the circuit court's ruling that no genuine issue as to any material fact exists regarding the Mays and the actions which occurred in this case. In *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), the landmark case regarding summary judgments, we held in syllabus point 4 that "[i]f there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Based upon this principle and the foregoing, we affirm the findings and conclusions of the circuit court and find that any further action pending against the Mays shall be dismissed.

### B.

With respect to Loudermilk, the appellant contends that a question of fact remains for the jury regarding whether Loudermilk was negligent in dispensing the gasoline in a Pepsi can and whether such behavior proximately caused Michael Johnson's injuries. We find this contention of the appellant to be meritorious.

The appellant contends that it was reasonably foreseeable that the boys asking for and obtaining gasoline in a Pepsi can could easily misuse the gasoline. Carl Loudermilk, who owns fifty percent of the service station with his father owning the other fifty percent, stated in his deposition that he had heard for years of kids "huffing" gasoline. The appellant, therefore, submits that it was unreasonable for Loudermilk to dispense the gasoline

---

1. A licensee is defined as "[o]ne who comes on to the premises for his own purpose but with the occupier's consent." *Black's Law Dictionary* 830 (5th ed. 1979).

in a Pepsi can without inquiring as to its future use and ultimately dispensing the gasoline in the Pepsi can for the boys to purchase.[2]

Loudermilk contends that it could not be foreseen that Michael Johnson would be seriously burned as a result of the gasoline purchase. It was Michael Johnson, and not Loudermilk as they argue, who should have protected Michael Johnson from himself and his abusive acts.

Loudermilk emphasizes this Court's recognition that: " 'The obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous....' " *Robertson v. LeMaster*, 171 W.Va. 607, 611–12, 301 S.E.2d 563, 568 (1983) *quoting* 2 F. Harper & James, *The Law of Torts*, § 18.2 (1956) (footnote omitted). Accordingly, Mr. Loudermilk stated that if he knew that the boys were going to use the gasoline as an intoxicant, he would not have sold the gasoline to them. Hence, Loudermilk asserts that there is no evidence to support the fact that Loudermilk knew or Michael Johnson indicated in any way that he was under the influence of any intoxicant or that he intended to use the gasoline as an intoxicant.

Loudermilk further contends that " ' "[a] person is not liable for damages which result from an event which was not expected and could not reasonably have been anticipated by an ordinarily prudent person." ' " *Anderson v. Moulder*, 183 W.Va. 77, 88, 394 S.E.2d 61, 72 (1990) (citations omitted). Therefore, Loudermilk asserts the circuit court's ruling was correct, because Louder-

milk did not perceive any risk in selling the gasoline to Michael Johnson, thus, there was no reason to suspect or foresee that Michael Johnson would be burned by "huffing" gasoline.

Loudermilk addresses the appellant's proximate cause assertions and speculations by asserting that the proximate cause of an injury is often described as the last negligent act contributing to an injury and without which such injury would not have resulted. *Dunning v. Barlow & Wisler, Inc.*, 148 W.Va. 206, 213, 133 S.E.2d 784, 789 (1963). Loudermilk correctly notes that "the proximate cause of an event is that cause which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred." *Matthews v. Cumberland & Allegheny Gas Co.*, 138 W.Va. 639, 654–55, 77 S.E.2d 180, 189 (1953) (citations omitted). Moreover, Loudermilk emphasizes that in order for a defendant to be liable for damages, one's negligence must be a proximate, and not a remote, cause of the plaintiff's injuries. *Metro v. Smith*, 146 W.Va. 983, 990, 124 S.E.2d 460, 464 (1962).

Based upon these principles, Loudermilk argues that the dispensing of the gasoline into the Pepsi can was not the last negligent act contributing to the injury nor was it the cause which produced the event. Rather, Loudermilk submits that Michael Johnson's injuries were caused by Michael Johnson when he exposed the gasoline in the plastic container to an open flame. Thus, Loudermilk's actions, as Loudermilk argues, were not and cannot be, as a matter of law, the proximate cause of Michael Johnson's injuries as defined by this Court.[3]

2. The appellant further argues that a Pepsi can is an unauthorized container in which to dispense gasoline, and therefore, Loudermilk was negligent in dispensing the gasoline to Michael Johnson in an unauthorized container. However, the appellant has failed to adequately brief this contention or offer any supporting authority regarding this contention.

3. Loudermilk also contends that other jurisdictions have held that there is no liability in similar circumstances. However, a few of the cases cited by Loudermilk were appeals from final verdicts rendered either by a jury or the lower court which is different than the circumstances

presented before this Court. *See Tharp v. Monsees*, 327 S.W.2d 889 (Mo.1959) (Verdict and judgment were for the minor plaintiff in the amount of $48,000. The Supreme Court of Missouri reversed the judgment of the lower court and held that where a gasoline station sold a pint of gasoline to a twelve-year-old boy in a glass container and a portion of the gasoline was used to clean paint brushes and the other portion exploded and another boy in an attempt to throw the gasoline burning in the jar away but instead spilled it upon the twelve-year-old plaintiff, there was no issue of negligence for the jury. The court based this finding upon the fact that there

Loudermilk put gasoline, an inherently dangerous product, in the possession of Michael Johnson, and it was the ignition of the gasoline that caused the fire and ultimately Michael Johnson's injuries. Based upon this finding, we are of the opinion that questions remain regarding the actions taken by Loudermilk or the failure of Loudermilk to take action. Could Loudermilk have foreseen the dangerous consequences of selling gasoline in a Pepsi can to the minor, Michael Johnson? Was the sale of the gasoline by Loudermilk to Michael Johnson the proximate cause of Michael Johnson's injuries? Can it be said that but for the sale of the gasoline by Loudermilk to Michael Johnson, the accident and resulting injuries would not have occurred? Was the last negligent act that of Loudermilk's selling a nickel's worth of gasoline in a Pepsi can to a minor without inquiring as to the intended use of the gasoline?

There are obviously questions of fact that remain for a jury as to whether Loudermilk was negligent and whether such negligence led to the proximate cause of Michael Johnson's injuries. The disputed facts, as well as facts that may evolve through further development of the record below, give rise to the need to clarify the application of the law by the circuit court. *See Waugh, supra.* We, therefore, reverse the ruling of the circuit court regarding Loudermilk. We believe, after reviewing the evidence in the light most favorable to the appellant, genuine issues of material fact remain regarding Loudermilk's actions or lack thereof, when Loudermilk's

employee, without any sort of inquiry, dispensed gasoline in a Pepsi can to the minor, Michael Johnson. *See* syl. pt. 4, *Aetna, supra.* We remand this case to the circuit court for further development of the facts and law.

## III.

Based upon these legal standards, a thorough review of the record and the evidence and arguments of counsel, we are of the opinion that the circuit court was correct in ruling that no genuine issue of fact existed with respect to the Mays; however, we find that the circuit court erred in finding that no genuine issue of fact existed with respect to Loudermilk. A clarification as to the application of the law is required. For the reasons stated herein, the ruling of the circuit court is affirmed, in part, reversed, in part, and this case is remanded to the circuit court for proceedings consistent with this opinion.

Affirmed, in part; reversed, in part; and remanded.

NEELY, Justice, dissenting in part:

I dissent with regard to the Court's failure to dismiss Loudermilk. People put gasoline in all sorts of containers for all sorts of reasons. In Vietnam, we kept a glass jar of gasoline to fill our Zippo lighters. We would dunk the lighter in the jar using an unbent paper clip to hold it.

People buy gasoline to clean paint brushes, to run model airplanes and to power lawn

---

was no proof that the gas station owner put the gasoline into the hands of a child of insufficient maturity; and furthermore, it did not appear to the court that the injury to the minor plaintiff was a natural and probable result of the sale.); *see also Greiving v. LaPlante,* 156 Kan. 196, 131 P.2d 898 (1942).

*But see Daniels v. Dauphine,* 557 So.2d 1062 (La.Ct.App.1990) (The mother of the injured minor plaintiff brought a suit against a gasoline station owner and its insurer to recover for the damages sustained by her minor child as a result of being burned by the gasoline. The lower court granted summary judgment for the defendant gasoline station owner and the mother appealed arguing, among other things, that the gasoline station was negligent in selling gasoline to a twelve-year-old boy who was too young to appreciate the danger of gasoline. The Louisiana Court of Appeal affirmed the lower court's

ruling using a *sine qua non* type of reasoning in finding that the sale of the gasoline was the cause-in-fact of the injury; however, a twelve-year-old boy of normal intelligence and experience is aware of the dangerous characteristics of gasoline and can ordinarily be expected to exercise sufficient judgment to protect himself and others from harm.); *see also Courtney v. American Oil Company,* 220 So.2d 675 (Fla.Dist.Ct.App.1968) (The lower court directed a verdict for the defendant gasoline station owner and the District Court of Appeal affirmed that ruling. In its affirmation, the District Court held that the intentional ignition of gasoline by one of two boys was not a foreseeable consequence of the sale of gasoline in an unlabeled container to boys ten and one-half years of age to use to fuel their model airplane and such sale was not the proximate cause of one of the boy's injuries).

mowers. It's a sorry day when a guy can't buy a little gasoline on a Saturday morning without executing an affidavit that he's not going to breath it, eat it or make a molotov cocktail.