617 S.E.2d 508

James Tolley and Nancy TOLLEY, his
wife, Plaintiffs Below, Appellants,

v.

CARBOLINE COMPANY, a Delaware
Corporation, E.I. Dupont De Nemours
and Company, a Delaware corporation,
and Fina Oil and Chemical Company, a
Delaware Corporation, Defendants Be-
low, Appellees.

No. 31751.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 8, 2005.

Decided March 18, 2005.

Dissenting Opinion of Justice
Starcher July 14, 2005.

Vincent Trivelli, Morgantown, Stuart Calwell, Charleston, West Viriginia, Attorneys for Appellants.

John R. McGhee, Jr., Kay Casto & Chaney, Charleston, West Virginia, Attorney for Appellee Carboline.

Paula L. Durst, James S. Crockett, Jr., Beth Ann Rauer, Spilman Thomas & Battle, Charleston, West Virginia, Attorneys for Appellee E.I. DuPont.

Rodney L. Baker II, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, West Virginia, Attorney for Appellee Fina Oil.

PER CURIAM:

James and Nancy Tolley, husband and wife, appellants/plaintiffs below (hereinafter referred to as "the Tolleys"), appeal an order of the Circuit Court of Kanawha County granting summary judgment in favor of Carboline Company, E.I. DuPont De Nemours and Company, and Fina Oil and Chemical Company, appellees/defendants below (hereinafter referred to as "the Appellees"). The Tolleys contend that genuine issues of material fact were in dispute, and, therefore, summary judgment was inappropriate. After thoroughly reviewing the record designated for appellate review and the pertinent authorities, we affirm the circuit court's decision to grant summary judgment.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 17, 1997, the Tolleys filed this action against the Appellees as well as ACF Industries, Inc. (hereinafter referred to as "ACF"). The Tolleys assert that the Appel-lees and ACF were responsible for Mr. Tolley's breathing ailments, some of which included aggravation of preexisting asthma and hypersensitivity pneumonitis. The Tolleys contended that Mr. Tolley's breathing ailments were caused by his exposure to chemical substances known as isocyanates and phthalic anhydrides. The Tolleys further alleged that the chemicals isocyanates and phthalic anhydrides derived from paints used by ACF.[1] Those paints were manufactured by the Appellees.

The claim against ACF was filed as a deliberate intent cause of action pursuant to W. Va.Code § 23–4–2(c)(2)(ii) (1983). The claim filed against the Appellees was premised upon the theories of negligence, failure to warn, breach of warranty, and strict liability. After a period of discovery, both the Appellees and ACF moved for summary judgment. The Appellees contended that summary judgment was appropriate because the evidence proved only that Mr. Tolley had a *mere possibility* of exposure to the chemicals isocyanates and phthalic anhydrides. Similarly, ACF argued that summary judgment was appropriate as there was *no actual evidence* that Mr. Tolley was exposed to isocyanates and phthalic anhydrides. The circuit court granted ACF's motion for summary judgment. However, the circuit court denied the summary judgment motion filed by the Appellees.

The Tolleys appealed the dismissal of their cause of action against ACF. This Court heard the appeal and affirmed the summary judgment ruling in *Tolley v. ACF Industries, Inc.*, 212 W.Va. 548, 575 S.E.2d 158 (2002) (per curiam) (hereinafter referred to as "*Tolley I*"). Subsequent to this Court's decision in *Tolley I*, the Appellees filed a renewed motion for summary judgment before the circuit court. The Tolleys responded to the renewed summary judgment motion by filing supplemental affidavits from experts. The trial court reconsidered the motion and concluded that rulings made in *Tolley I* were dispositive of the claims against the Appellees. The circuit court therefore granted the Appellees' renewed motion for summary

---

1. Mr. Tolley was a former employee of ACF.

judgment. From this second ruling, the Tolleys now appeal.[2]

## II.

### STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). The decisions of this Court have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Further, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

## III.

### DISCUSSION

As previously indicated, subsequent to our decision in *Tolley I*, Appellees filed a re-

newed motion for summary judgment.[3] The trial court found that its rulings on proximate cause against ACF, which were affirmed by this Court in *Tolley I*, were controlling. The circuit court therefore granted the Appellees' renewed motion for summary judgment. Here, the Tolleys contend that the decision in *Tolley I* was not dispositive of the action against the Appellees because *Tolley I* involved a statutory deliberate intent cause of action against an employer. Further, the Tolleys contend that *Tolley I* is not dispositive because they produced additional evidence not considered in *Tolley I*. We address both issues separately.

#### A. The Issue of Proximate Cause in Tolley I

The Tolleys assert that because their action against the Appellees was premised upon theories of negligence, failure to warn, breach of warranty, and strict liability, the decision in *Tolley I* has no application. They contend that *Tolley I* dealt only with a deliberate intent cause of action, which is distinguishable from the instant causes of action.

The Tolleys are correct in asserting that a deliberate intent cause of action requires proof of elements which are unnecessary to establish a claim for negligence, failure to warn, breach of warranty, or strict liability.[4]

2. The facts involved in this case are fully set out in *Tolley I*.

3. As to the propriety of renewing a previously denied summary judgment motion, it has been recognized that:

A trial court may, in the exercise of its discretion, allow a party to renew a previously denied summary judgment motion. A renewed summary judgment motion is appropriate if one of the following grounds exists: (1) an intervening change in the controlling law; (2) the availability of new evidence or an expanded factual record; or (3) a need to correct a clear error or prevent manifest injustice. Franklin D. Cleckley, Robin Jean Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 56(c) (Supp.2004) (citing *Garvin v. Wheeler*, 304 F.3d 628 (7th Cir. 2002)).

4. The statutory requirements for establishing a deliberate intent cause of action against an employer are:

(A) That a specific unsafe working condition existed in the workplace which presented a

high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

However, there is one requirement that exists in a deliberate intent cause of action that also exists in the claims asserted against the Appellees. That requirement is proximate cause. *See Aikens v. Debow,* 208 W.Va. 486, 491, 541 S.E.2d 576, 581 (2000) (discussing requirement of proximate cause in negligence cause of action); *City Nat'l. Bank of Charleston v. Wells,* 181 W.Va. 763, 771, 384 S.E.2d 374, 382 (1989) (discussing requirement of proximate cause in breach of warranty cause of action); *Ilosky v. Michelin Tire Corp.,* 172 W.Va. 435, 443, 307 S.E.2d 603, 611 (1983) (discussing requirement of proximate cause in failure to warn cause of action); *Morningstar v. Black & Decker Mfg. Co.,* 162 W.Va. 857, 883, 253 S.E.2d 666, 680 (1979) (discussing requirement of proximate cause in strict liability cause of action).

 Although the issue of proximate cause in a deliberate intent cause of action is statutory, the definition of proximate cause set out in the statute is the common law definition adopted by this Court.[5] We have held that " 'the proximate cause of an event is that cause which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred.' " *Johnson v. Mays,* 191 W.Va. 628, 633, 447 S.E.2d 563, 568 (1994) (quoting *Matthews v. Cumberland & Allegheny Gas Co.,* 138 W.Va. 639, 654–55, 77 S.E.2d 180, 189 (1953)). The burden of establishing proximate cause is always on the plaintiff. *See* Syl. pt. 2, *Walton v. Given,* 158 W.Va. 897, 215 S.E.2d 647 (1975) ("The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause. of the injury."); *Whetstine v. Gates Rubber Co.,* 895 F.2d 388, 393 (7th Cir.1990) ("A plaintiff who fails to establish the element of proximate cause ... has not sustained his burden of making a prima facie case[.]"). Further, "[s]ummary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case

and on which that party will bear the burden of proof at trial." *Grandbois & Grandbois, Inc. v. City of Watford City,* 685 N.W.2d 129, 135 (N.D.2004).

In *Tolley I* we clearly found that the Tolleys failed to establish proximate cause. In fact, we held that the Tolleys failed to present *any* evidence to show that, while Mr. Tolley was working for AFC, he was exposed to any of the chemicals that allegedly caused or exacerbated his breathing problems. The opinion addressed the proximate cause issue as follows:

> The lower court found that [the Tolleys] failed to prove the fifth prong of the "deliberate intention" standard based on the fact that their medical experts were unable to identify with the necessary specificity the cause of Mr. Tolley's medical condition[:]
>
> > Plaintiffs have failed to establish proximate cause because plaintiffs' medical causation expert cannot identify the actual cause of the plaintiff's respiratory condition. Plaintiffs' medical expert simply opined that 'there were three potential causes' for the plaintiff's alleged aggravation of his preexisting asthma: exposure to phthalic anhydrides or isocyanates or chronic exposure to unidentified non-specific irritants.
>
> In response to this finding, [the Tolleys] contend that by identifying exposure "to at least three different products that can cause his condition," they met the proximate causation requirement.
>
> As the circuit court correctly ruled, "the law is clear that a mere possibility of causation is not sufficient to allow a reasonable juror to find causation." Just as [the Tolleys] relied solely on the "opportunity" for exposure in arguing that they demonstrated an unsafe working condition, they similarly rely on indeterminate expert testimony on causation that is based solely on possibility.
>
> Critical to establishing exposure to a toxic chemical is knowledge of the dose or

---

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

W. Va.Code § 23–4–2(c)(2)(ii).

5. The applicable statutory provision, W.Va.Code § 23–4–2(c)(2)(ii)(E), does not define proximate cause.

exposure amount and the duration of the exposure.... In this case, there is absolutely no evidence to demonstrate that Mr. Tolley was ever exposed to isocyanates. Without that crucial evidence and certainly without any indication of isocyanate antibodies in his blood, there is no basis from which a jury could begin to conclude that Mr. Tolley's breathing condition resulted from exposure to isocyanates.

Dr. Lockey, an expert witness upon whom [the Tolleys] rely for causation, testified that he had no knowledge of any of the factors that would impact on issues of exposure. For example, he did not know how often Mr. Tolley was in the Exterior Finish Booth where the HDI containing top coat was applied; how close Mr. Tolley was to the Prime Booth or to the paint sprayers; the type of ventilation equipment used; or the frequency and level of exposure. Acknowledging that this was a case of "potential exposure," Dr. Lockey based his causation testimony on Mr. Tolley's general representation that he "was in and out of the area on a regular basis." Other than a single pulmonary function test, Dr. Lockey did not review any of Mr. Tolley's medical records for the relevant time period.

Dr. Lockey, as the trial court specifically found, "testified that the plaintiff's current respiratory problems could be aggravation of preexisting asthma, predating his employment at ACF, exacerbated by nonspecific irritants irrespective of any exposure at ACF to the chemicals at issue." Given the lack of any evidence of exposure in this case combined with the inability of [the Tolleys'] experts to connect his medical symptoms to the alleged exposure, we

simply cannot find that the lower court erred in concluding that [the Tolleys'] "general conclusion [that Mr. Tolley had the opportunity for exposure to asthma sensitizers] does not establish actual exposure and does not satisfy the proximate cause requirement of the West Virginia Workers' Compensation Act."

*Tolley I,* 212 W.Va. at 558–59, 575 S.E.2d at 168–69.[6]

In the instant case, the trial court held that because *Tolley I* adopted the findings of fact that the lower court had made in the Tolleys' claim against ACF, "any contrary findings of fact or conclusions of law on the causation issue [against the Appellees] would violate principles of collateral estoppel (issue preclusion)." [7]

We previously have noted that "[t]he doctrine of collateral estoppel applies to preclude the litigation of an issue that has been previously resolved." *Stillwell v. City of Wheeling,* 210 W.Va. 599, 605, 558 S.E.2d 598, 604 (2001). " 'Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit.' " *Stillwell,* 210 W.Va. at 605–06, 558 S.E.2d at 604–05 (quoting *Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965)). This Court has held that

" [c]ollateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party

---

6. The decision in *Tolley I* focused upon the chemical isocyanates, because "the lower court found that '[t]here is absolutely no actual evidence in this case that any products used in ACF's Paint Department during the relevant time period contained phthalic anhydrides.' " *Tolley I,* 212 W.Va. at 553 n. 10, 575 S.E.2d at 163 n. 10.

7. During the proceeding before the trial court, the Appellees argued that the doctrine of the law of the case applied in order to preclude relitigating the proximate cause issue. This Court has indicated that the law of the case doctrine " 'gen-

erally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal.' " *State ex rel. Frazier & Oxley, L.C. v. Cummings,* 214 W.Va. 802, 808, 591 S.E.2d 728, 734 (2003) (quoting 5 Am.Jur.2d *Appellate Review* § 605, at 300 (1995)). Insofar as the trial court did not rely upon the law of the case doctrine, we will not consider its application in the context of the proximate cause issue.

or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.' Syl. Pt. 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995)."

Syl. pt. 1, *Haba v. Big Arm Bar & Grill, Inc.*, 196 W.Va. 129, 468 S.E.2d 915 (1996).

■ We believe that all four elements of collateral estoppel were satisfied in this case. First, in the instant case the issue of whether or not Mr. Tolley's breathing problems were proximately caused by isocyanates or phthalic anhydrides is the same issue that was presented in *Tolley I*. Second, there has been a final adjudication on the merits of the *Tolley I* action, insofar as this Court affirmed the summary judgment order in favor of ACF. *See Stemler v. Florence*, 350 F.3d 578, 587 (6th Cir.2003) ("A summary judgment order is a decision on the merits."). Third, the Tolleys are the plaintiffs in the instant action, and they were the plaintiffs in *Tolley I*. Finally, the Tolleys had a full and fair opportunity to litigate the proximate cause issue in *Tolley I*.

In order for the Tolleys to overcome the application of collateral estoppel, "[t]here must be additional and strong fact evidence, which has not been shown to have been supplied to the [trial] court [in *Tolley I*]." *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed.Cir.1984). The Tolleys contend that in the instant proceeding they did in fact produce additional evidence on the proximate cause issue that was not presented in *Tolley I*. Accordingly, we shall examine this contention in the next section.

### B. Additional Evidence not Presented in Tolley I

■ The Tolleys introduced the affidavits of two experts in the instant proceeding that were not introduced in *Tolley I*.[8] The affidavits were submitted by Dr. James E. Lockey and Arnold M. Harrison, Ph.D. The trial court indicated in its order that the affidavits were "untimely,"[9] but were considered. Further, even after considering the affidavits, the trial court found that the Tolleys "did not meet their burden to designate specific facts showing a genuine issue for trial on the essential element of proximate cause." As a result of the court's ruling, we examine each affidavit separately.

**1. Dr. Lockey's affidavit.** Dr. Lockey's deposition testimony was considered in *Tolley I*. In this Court's decision in *Tolley I* we found that Dr. Lockey was only able to state that " 'there were three potential causes' for the plaintiff's alleged aggravation of his preexisting asthma: exposure to phthalic anhydrides or isocyanates or chronic exposure to unidentified non-specific irritants." *Tolley I*, 212 W.Va. at 558, 575 S.E.2d at 168. Therefore, we rejected Dr. Lockey's opinion as "indeterminate expert testimony on causation that is based solely on possibility." *Id.*

In response to this Court's rejection of Dr. Lockey's deposition testimony on the issue of proximate cause in *Tolley I*, the Tolleys obtained and proffered a new affidavit from Dr. Lockey wherein the following was opined:

> It is my opinion within a reasonable degree of medical probability that the recurrence of Mr. Tolley's asthmatic condition was a result of his past exposure to isocyanates, past exposure to phthalic anhydride, and past chronic exposure to irritants which in an atopic individual can increase the risk for recurrence of asthma due to chronic airway inflammation and resultant airway re-modeling.

The Tolleys contend that this opinion was sufficient to withstand summary judgment. If Dr. Lockey's affidavit had been properly before the trial court, we *might* have a basis

---

**8.** The Tolleys have attempted to argue generally that some of the issues ruled upon by this Court in *Tolley I* were wrongly decided. We reject such an attack. "Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined ... by the appellate court on a subsequent appeal." *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 605 (5th Cir.2004) (citations and internal quotations omitted).

**9.** The circuit court's order does not state why the affidavits were untimely. However, the Appellees have asserted that Dr. Lockey's affidavit was untimely because it should have been submitted under the original motion for summary judgment, and that Dr. Harrison's affidavit was untimely because he was not listed as an expert witness within the time frame of the scheduling order.

for resolving this issue differently from the decision in *Tolley I*.[10] However, as is evident from the record, Dr. Lockey's affidavit falls within the definition of an improper sham affidavit.

▇▇▇▇ In the reply of the Appellees to the Tolleys' response to the summary judgment motion, the Appellees objected to the introduction of the affidavit based upon footnote 12 of our decision in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). In the *Williams* opinion, Justice Cleckley observed that "when a party has given clear answers to unambiguous questions during a·deposition or in answers to interrogatories, he does not create a trialworthy issue and defeat a motion for summary judgment by filing an affidavit that clearly is contradictory, where the party does not give a satisfactory explanation of why the testimony has changed." *Williams*, 194 W.Va. at 60 n. 12, 459 S.E.2d at 337 n. 12. This Court recently elevated footnote 12 of *Williams* into a syllabus point of law in *Kiser v. Caudill*, 215 W.Va. 403, 599 S.E.2d 826 (2004). In Syllabus point 4 of *Kiser* we held:

> To defeat summary judgment, an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained. To determine whether the witness's explanation for the contradictory affidavit is adequate, the circuit court should examine: (1) Whether the deposition afforded the opportunity for direct and cross-examination of the witness; (2) whether the witness had access to pertinent evidence or information prior to or at the time of his or her deposition, or whether the affidavit was based upon newly dis-

covered evidence not known or available at the time of the deposition; and (3) whether the earlier deposition testimony reflects confusion, lack of recollection or other legitimate lack of clarity that the affidavit justifiably attempts to explain.

215 W.Va. 403, 599 S.E.2d 826. We explained in *Kiser* that " '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " *Kiser*, 215 W.Va. at 408, 599 S.E.2d at 831 (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir.1969)). Consequently, "the 'sham affidavit' rule precludes a party from creating an issue of fact to prevent summary judgment by submitting an affidavit that directly contradicts previous deposition testimony of the affiant." *Kiser*, 215 W.Va. at 409, 599 S.E.2d at 832.

▇▇▇▇ Dr. Lockey's affidavit is a classic example of a sham affidavit. Consequently, it should not have been considered by the trial court under *Williams*, nor with regard to our subsequent decision in *Kiser*.[11] In *Tolley I* this Court specifically found that Dr. Lockey testified during his deposition that there were three possible causes for Mr. Tolley's breathing problems: phthalic anhydrides, isocyanates or chronic exposure to unidentified non-specific irritants. Through a subsequent affidavit Dr. Lockey has contradicted his deposition testimony by stating affirmatively that Mr. Tolley's breathing problems were caused by his exposure to isocyanates, phthalic anhydrides, and chronic exposure to irritants. The Tolleys have of-

---

10. Dr. Lockey's affidavit indicates Mr. Tolley was exposed to phthalic anhydride. However, as we previously noted in this opinion, the decision in *Tolley I* accepted the trial court's determination that " '[t]here is absolutely no actual evidence in this case that any products used in ACF's Paint Department during the relevant time period contained phthalic anhydrides.' " *Tolley I*, 212 W.Va. at 553 n. 10, 575 S.E.2d at 163 n. 10.

11. We are free to decide this issue on grounds different from those of the trial court. *See Conrad v. ARA Szabo*, 198 W.Va. 362, 369, 480 S.E.2d 801, 808 (1996) ("In determining whether

a motion to dismiss or a summary judgment is appropriate, we apply the same test that the circuit court should have applied initially. We are not wed, therefore, to the lower court's rationale, but may rule on any alternate ground manifest in the record."); Syl. pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

fered no explanation as to the contradiction in Dr. Lockey's deposition testimony and his affidavit.[12] Therefore, Dr. Lockey's affidavit could not be used ˙to defeat summary judgment for the Appellees, because such affidavit "clearly contradict[ed] [Dr. Lockey's] own deposition testimony and can only be considered to have been tailored to avoid the consequences of h[is] earlier testimony[.]" *Phillips v. Bronx Lebanon Hosp.*, 268 A.D.2d 318, 701 N.Y.S.2d 403, 405 (2000).

**2. Dr. Harrison's affidavit.** In response to the renewed motion for summary judgment, the Tolleys submitted the affidavit of Dr. Harrison, a chemist. The Appellees objected to the affidavit stating that Dr. Harrison "was an expert witness not disclosed in accordance with the scheduling order entered in this case." Although the trial court found the evidence to be "untimely," it was nevertheless considered. However, after considering Dr. Harrison's affidavit, the trial court found that it did not present a factual dispute on the issue of causation. We agree. In his affidavit, Dr. Harrison gave the following opinion:

> That based on his personal experience, knowledge of the literature, and professional experience as a chemist, it is his opinion that applying heat stress to materials coated with activated polyurethane and epoxy resin coating products, including but not limited to heat from welding, produces

a range of products of decomposition, including, but not limited to, components of the paints, and that such products include, in the case of epoxy resin coating products which use anhydride curing agents, phthalic acid anhydride and similar anhydrides, and, in the case of activated polyurethane products, monomers of isocyanates.

The Appellees contend, and we agree, that the affidavit of Dr. Harrison "at best establishes that the possibility exists that isocyanates or acid anhydrides could be released during welding or burning activities if certain paints or coatings ,are used." Dr. Harrison's affidavit did not say that Mr. Tolley was actually exposed to isocyanates or phthalic anhydrides,[13] or that such exposure caused Mr. Tolley's breathing problems.[14] In other words, Dr. Harrison's affidavit, standing alone, did not have any relevancy on the dispositive issue of proximate cause. "Only disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Consequently, we find that the trial court was correct in finding that Dr. Harrison's affidavit did not create a disputed genuine issue of fact on the proximate cause issue. (*See McHale v. Westcott*, 893 F.Supp. 143, 150 (N.D.N.Y.1995)) ("[P]laintiffs ... must

---

**12.** Dr. Lockey's new affidavit cannot even withstand the thoughtful analysis applied by Justice Starcher in his concurring opinion in *Kiser.* Writing separately in *Kiser,* Justice Starcher stated the following with respect to an affidavit of an expert that contradicted his/her earlier deposition testimony:

> An expert witness's understanding of a case, and testimony on a legal opinion, can change with time. An expert witness, who is unfamiliar with a particular issue in a deposition, can become familiar with the issue after a deposition by doing additional research or testing. An expert brings experience to the courtroom, and uses that experience to assist the jury in understanding the facts. If the expert's experience changes, resulting in a change in the expert's opinion or other deposition testimony, then the party offering the expert is entitled to amend the expert's testimony through use of an affidavit. *But that affidavit had also better list some pretty good reasons for the change in the expert's testimony.*

. . . .

> ... [I]f a witness's deposition testimony is in error, or needs modification, and counsel wishes to correct or alter that testimony by use of an affidavit, *counsel cannot create a genuine issue of material fact by simply sticking a conclusory statement in the affidavit that contradicts the deposition testimony.* Counsel must make certain that the witness's affidavit fully accounts for the change in testimony.

*Kiser,* 215 W.Va. at 411–12, 599 S.E.2d at 834–35 (Starcher, J., concurring) (emphasis added).

**13.** We must again point out that the decision in *Tolley I* accepted the trial court's determination that " '[t]here is absolutely no actual evidence in this case that any products used in ACF's Paint Department during the relevant time period contained phthalic anhydrides.' " *Tolley I,* 212 W.Va. at 553 n. 10, 575 S.E.2d at 163 n. 10.

**14.** Presumably such a determination was outside the scope of Dr. Harrison's expertise because he was a chemist, not a physician.

produce some evidence 'sufficient to permit a finding of proximate cause based not upon speculation, but upon the logical inferences to be drawn from the evidence.' " (quoting *Ellis v. County of Albany,* 205 A.D.2d 1005, 613 N.Y.S.2d 983, 984–85 (1994))).

## IV.

## CONCLUSION

In view of the foregoing, the circuit court's order granting summary judgment in favor of the Appellees is affirmed.

Affirmed.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

STARCHER, J., dissenting.

(Filed July 14, 2005)

I dissent because the circuit court below, and majority here, went too far and made what are essentially findings of fact. Any time a judge decides that a piece of evidence is a "sham," the judge is making a factual credibility determination.

The majority opinion wrongfully finds that Dr. James E. Lockey's affidavit is a "sham" that should have been ignored by the circuit court. In 2002, when this case was previously before this Court, we read Dr. Lockey's deposition and decided that under questioning from defense lawyers, Dr. Lockey gave equivocal testimony that there were "three potential causes" for the plaintiff's injuries. On remand, the plaintiffs submitted an affidavit saying "to a reasonable degree of medical probability" the plaintiff's injuries were caused by three chemicals. The Court now says that Dr. Lockey's affidavit *might* have been acceptable, had it met certain standards which were clearly enunciated by the Court · in 2004 in *Kiser v. Caudill,* 215 W.Va. 403, 599 S.E.2d 826 (2004).

There is nothing in the record to suggest that, during his deposition, Dr. Lockey answered "No" when asked, "Do you have an opinion, to a reasonable degree of medical probability, about the cause of the plaintiff's condition?" I see nothing in the affidavit to show Dr. Lockey contradicted his deposition testimony; the affidavit merely clarified the testimony, and used "magic words" that would defeat summary judgment.

The only lesson I can take away from the majority's punitive opinion is that counsel must, during a deposition, have their expert recite precisely the "magic words" that will allow their case to survive summary judgment. Simply because the expert's opinion is written clearly, in an affidavit, opinion letter or otherwise, is not enough. If opposing counsel sidesteps the issue and doesn't ask any questions designed to elicit the "magic words" during the deposition, using the majority opinion's reasoning *any* affidavit that follows a deposition and clarifies the expert's testimony (and does not plainly state the clarification is necessary because the "magic words" question was never asked) could automatically be ignored by the judge as incredible and a "sham."

This case should have been given to a jury to assess whether Dr. Lockey's testimony was credible. I respectfully dissent.