UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1165

MELODEE WHITE, Administratrix of the Estate of John H. White, deceased, individually and as next friend and guardian of M. W., an infant under the age of eighteen,

Plaintiff - Appellant,

v.

THE DOW CHEMICAL COMPANY, a foreign corporation; DOW AGROSCIENCES L.L.C., a foreign corporation,

Defendants – Appellees,

and

JOHN DOE HERBICIDE AND CHEMICAL MANUFACTURING CORPORATION; JOHN DOE HERBICIDE AND CHEMICAL DISTRIBUTING CORPORATION; E.I. DUPONT DE NEMOURS & COMPANY, INCORPORATED, a foreign corporation; ASPLUNDH TREE EXPERT COMPANY, a foreign corporation; ARBORCHEM PRODUCTS COMPANY, a foreign corporation; MONSANTO COMPANY, a foreign corporation; PHARMACIA CORPORATION, a foreign corporation,

Defendants.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph R. Goodwin, Chief District Judge. (2:05-cv-00247)

Argued: January 28, 2009                    Decided: April 8, 2009

Before NIEMEYER and MICHAEL, Circuit Judges, and Arthur L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Samuel A. Hrko, SEGAL LAW FIRM, Charleston, West Virginia, for Appellant. Dean Taylor Barnhard, BARNES & THORNBURG, Indianapolis, Indiana, for Appellees. **ON BRIEF:** Scott S. Segal, SEGAL LAW FIRM, Charleston, West Virginia, for Appellant. Joseph G. Eaton, William A. Hahn, BARNES & THORNBURG, Indianapolis, Indiana; Paul J. Loftus, Marc E. Williams, HUDDLESTON BOLEN, L.L.P., Huntington, West Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Melodee White ("Plaintiff") appeals from the district court's order granting summary judgment in favor of the Dow Chemical Company and Dow Agrosciences L.L.C. (the "Dow Defendants"). Mrs. White, a citizen of Randolph County, West Virginia, filed this products liability action on March 24, 2005 against the Dow Defendants, E.I. du Pont de Nemours and Company, a foreign corporation ("DuPont"), Arborchem Products Co., a foreign corporation, Monsanto Company, a foreign corporation, Pharmacia Corporation, a foreign corporation, Asplundh Tree Expert Co., a foreign corporation ("Asplundh"), John Doe Herbicide and Chemical Manufacturing Corporation(s), and John Doe Herbicide and Chemical Distributing Corporation(s), as the Administratrix of the estate of her deceased husband, John W. White, and in her individual capacity and as next friend and guardian of her minor child. She filed this action in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1332, based on the district court's diversity of citizenship jurisdiction over causes of action between citizens of different states where the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

Plaintiff alleged in her complaint that Mr. White died of chronic myelogenous leukemia as a result of the defendants'

3

negligence, breach of warranty, and strict liability, because he was exposed to their herbicides and/or pesticides while he was employed by Asplundh. Subsequently, Plaintiff amended her complaint naming only the Dow Defendants, DuPont, Asplundh, and the John Doe Herbicide and Chemical Distributing Corporation(s). In the amended complaint, Plaintiff alleged the same causes of action.

The district court granted summary judgment in favor of the Dow Defendants. It held that Plaintiff failed to show that her husband's injuries were caused by the Dow Defendants' products. Plaintiff contends that the district court erred in granting the Dow Defendants' motion for summary judgment because she presented sufficient evidence "from which a reasonable juror could return a verdict in favor of the Plaintiff." We affirm because we conclude that the evidence presented by Plaintiff in opposition to the Dow Defendants' motion for summary judgment was insufficient under West Virginia's products liability law to demonstrate that any of the Dow Defendants' herbicides caused Mr. White's illness.

I

A

Plaintiff filed her original complaint against John Doe Herbicide and Chemical Manufacturing Corporation(s); John Doe Herbicide and Chemical Distributing Corporation(s); The Dow

Chemical Company, a foreign corporation; Dow Agrosciences, L.L.C., a foreign corporation; E. I. du Pont de Nemours and Company, a foreign corporation; Asplundh Tree Expert Co., a foreign corporation; Arborchem Products Co., a foreign corporation; Monsanto Company, a foreign corporation; Pharmacia Corporation, a foreign corporation.

She alleged in Count I that each of the defendants except for Asplundh ("The Chemical Defendants") were liable for their negligence in manufacturing, processing or supplying toxic chemicals that Mr. White used as an Asplundh employee which caused him to develop chronic myelogenous leukemia, which was the cause of his death.

In Count II, Plaintiff alleged that the Chemical Defendants were liable for breach of warranty for impliedly warranting that their herbicides and pesticides were of good and merchantable quality.

In Count III, Plaintiff alleged that the Chemical Defendants were strictly liable in tort for manufacturing, processing, selling, or supplying chemicals that were in defective condition and were unreasonably dangerous and unfit for their intended use and were deleterious, poisonous and highly harmful to Mr. White; and his exposure to their chemicals caused his death from chronic myelogenous leukemia.

5

In Count IV, Plaintiff alleged that Asplundh demonstrated a deliberate intention to expose Mr. White to unsafe working conditions by: 1) using herbicides and other chemicals to control unwanted vegetation without warning him of the hazards posed by exposure to herbicides and other toxic chemicals; 2) failing to provide him with adequate safety equipment; and, 3) failing to conduct periodic physical examinations to monitor his blood chemistry and health for signs of changes in his health as the result of such exposure.

In Count V, Plaintiff alleged that each of the Defendants should be ordered to pay damages for causing Mr. White conscious pain and suffering, and mental and emotional distress prior to his death.

In Count VI, Plaintiff alleged that Plaintiff is entitled to wrongful death damages under West Virginia Code § 55-7-6.

B

On August 22, 2005, the Dow Defendants filed a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for a more definite statement "identifying the particular Dow product(s) that Plaintiff contends caused or contributed to the injuries at issue in this lawsuit." Plaintiff filed a response to the Dow Defendants' motion on September 8, 2005. She asserted that the allegations in the complaint "provide[d] Dow with sufficient notice under Rule 8(a) of the substance of her

6

cause of action." The district court denied the Dow Defendants' motion for a more definite statement on September 16, 2005.

C

The Dow Defendants filed their answer to Plaintiff's complaint on September 26, 2005. Apart from admitting the identity of the parties, the Dow Defendants denied each of the substantive allegations set forth in paragraphs 1 to 40. In response to paragraph 5 of the complaint, the Dow Defendants alleged that they lack "knowledge or information sufficient to form a belief as to the truth of the allegations that John W. White used any products manufactured by The Dow Chemical Company in his workplace, and therefore den[y] the same."

D

On November 7, 2005, the district court ordered that discovery should proceed in stages. Counsel were directed to "submit to the court an agreed preservation order, which will include provisions to assure preservation and retention of documents and electronic records, including email, which are relevant to this civil action." The district court ordered that "[f]rom January 3, 2006 through March 17, 2006, counsel shall engage in informal discovery with respect to identifying the substances to which John W. White was exposed prior to his diagnosis." The district court also ordered that "depositions of individuals with knowledge of the substances to which John W.

7

White was exposed prior to his diagnosis" should be taken during the week of March 13-17, 2006.

At a scheduling conference conducted on May 15, 2006, it was agreed that "[p]rior to the next status conference, counsel for Plaintiff[] will interview John White's former co-workers to determine to which substances, if any, John White was exposed during his employment."

A fourth status and scheduling conference was conducted on June 12, 2006. The district court ordered that "[p]rior to the next status conference, counsel for Plaintiff[] will continue to interview John White's former co-workers to determine to which substances, if any, John White was exposed during his employment." The district court also ordered counsel for the Dow Defendants, DuPont, Monsanto and Pharmacia to

> interview long-time employees with knowledge of the products marketed . . . to learn: -the identity of products marketed during the period that John White was employed by Asplundh; -those products which were typically mixed with diesel fuel in the application process. Dow, DuPont, Monsanto and Pharmacia will produce information and labels for the products identified.

On June 24, 2006, the district court conducted a fifth status conference. The court ordered that

> [p]rior to the next status conference, counsel for Plaintiff[] will continue to interview John White's former co-workers to determine to which substances, if any, John White was exposed during his employment. Within one week, Asplundh will indicate whether Plaintiff's counsel may interview certain designated

8

management personnel outside the presence of counsel for Asplundh. In addition, Asplundh will contact employees in the Vegetation/Chemical Department for information concerning that substances used to treat utility rights-of-way during the period 1974-1993.

A sixth status conference was held August 21, 2006. The district court issued the following order:

1. On or before August 25, 2006, counsel for Asplundh will identify to counsel for Plaintiffs the names of additional employees in the Vegetation/Chemical Department during the period in question, if any.

2. On or before September 21, 2006, counsel will take the depositions of four individuals who have executed affidavits, and such other persons as counsel agree, at times and places agreed by counsel for the parties.

3. Plaintiffs have leave of court to file an amended complaint. The amended complaint will be filed on or about October 6, 2006.

II

A

Plaintiff filed a first amended complaint on October 6, 2006. She named as defendants, the Dow Chemical Company, Dow Agrosciences L.L.C., E.I du Pont de Nemours and Company, Asplundh Tree Expert Co., and John Dow Herbicide and Chemical Distributing Corporation(s). The first amended complaint alleged that the Dow Defendants and DuPont were liable for negligence, breach of warranty, and strict liability. It also alleged that Asplundh was liable for deliberately intending to expose its employees and Mr. White to unsafe working conditions.

9

Plaintiff eliminated from the first amended complaint Arborchem Products Co., Monsanto Company, and Pharmacia as party defendants. The court entered an order on November 6, 2006 dismissing Plaintiff's claims against DuPont with prejudice at Plaintiff's request, and terminating the action against Monsanto and Pharmacia.

The Dow Defendants filed their answer to the first amended complaint on October 27, 2006. The Dow Defendants denied that they were liable for negligence, breach of warranty, or strict liability based on the condition of its products.

B

The Dow Defendants filed a motion for summary judgment on January 17, 2007. They alleged that Plaintiff "has been unable to present admissible evidence identifying any of the Dow Defendants' products to which John White was allegedly exposed." They also argued that none of the individuals relied upon by Plaintiff for the purpose of identifying the Dow Defendants' products "have any personal knowledge of White ever applying any herbicides while with Asplundh. Further, none of these individuals can or do testify that they ever saw White using or being exposed to any of the Dow Defendants' products on any particular date or at any particular worksite."

C

Plaintiff filed a response to the Dow Defendants' motion for summary judgment on February 5, 2007. She noted that as a result of the parties named on the first amended complaint, and orders of dismissal, the only remaining defendants were Asplundh and the Dow Defendants.

To support her opposition to the Dow Defendants' motion for summary judgment, Plaintiff presented the declarations of Asplundh employees who worked for that company in the same positions held by Mr. White.

Charles McKinney declared in an affidavit that he worked with Mr. White from around 1976 to 1979. He and Mr. White had similar duties including the spraying of foliage with various chemicals. During that time period, the Dow chemicals were mixed with fuel oil or diesel fuel. This mixture was sprayed on foliage. During spring and summer, Asplundh employees would spray every day. While spraying, or walking through sprayed foliage, diesel fuel and chemicals would get on the worker's clothing and body.

In his subsequent deposition testimony, reported on October 31, 2006, Mr. McKinney testified that he never observed Mr. White while he was working. Mr. McKinney also testified that he did not recall any chemical being mixed with diesel fuel.

Walter Lee Matthews declared in an affidavit that he worked in the vegetation department of Asplundh. His duties were to procure and distribute products in the field. During the 1970s and 1980s, Dow products were used by the workers in the field. When Mr. Matthews entered the chemical department of Asplundh in 1970, 70% of the herbicides were mixed with oil and 30% were mixed with water. Later, the ratio changed; 98% were mixed with water and 2% were mixed with oil. He never saw Mr. White in the field. Mr. Matthews also never saw anyone spray the chemical products that he provided Asplundh employees.

Michael E. Kline declared in an affidavit that he worked at Asplundh beginning in 1980 through 1983. He again worked at Asplundh from 1989 to 2001. He used Dow products mixed with diesel fuel during the time period of 1980 to 1983. The chemical and diesel fuel mixture would get on a worker's body when it was sprayed, or when a person walked through the foliage after it was sprayed. Mr. Kline also testified that he never worked on a crew with Mr. White, nor did he ever see him apply herbicides.

Willis Cooley, Jr. testified that Mr. White was his general foreman at Asplundh during the summer of 1997 and from April to August of 1998. Mr. Cooley used Dow products in spraying foliage. When Mr. White would visit work sites the spraying

12

would stop while he spoke to the crew, but residual spray would get on him. Mr. Cooley never saw Mr. White spray herbicides.

James W. Orr stated in his affidavit that since 2000, he has served as the general manager of the Technical Services Division of Asplundh. In that capacity he provides information relating to the biology and botany of trees and vegetation. Since 1986, Asplundh has not used diesel fuel for treatments calling for an oil dilutant. Instead, it uses Arborchem Basal Oil – a mixture that does not include diesel fuel.

D

The district court denied the Dow Defendants' January 17, 2007 motion for a summary judgment on March 9, 2007. It concluded that the motion was premature because the completion of discovery was not scheduled until June 19, 2007, and the deadline for the filing of a motion for summary judgment and other dispositive motions was set for August 23, 2007.

III

A

The Dow Defendants filed a renewed motion for summary judgment on October 5, 2007. They alleged that "Plaintiff has been unable to present admissible evidence identifying any Dow product to which John White was exposed." The Dow Defendants noted that the district court had declined to address the merits

of their initial motion for summary judgment because discovery was still ongoing. They asserted that "[d]iscovery is now closed, yet the factual record remains the same."

B

On October 19, 2007, Mrs. White filed an opposition to the Dow Defendants' renewed motion for a summary judgment. She submitted her own affidavit that was sworn to on October 18, 2007. In her affidavit, Mrs. White alleged that she was married to Mr. White in 1976. At that time, Mr. White was employed by Asplundh. She declared that up until the early 1990s, Mr. White "would come home at least three times a week, reeking of diesel fuel." Mr. White's work clothes were placed in garbage bags and laundered separately. Because she was unable to get the diesel fuel smell and stains out of his clothing, she would frequently discard them after several uses. Mr. White also complained that his skin was burning from being exposed to diesel fuel. In addition, Mr. White's work vehicle smelled strongly of diesel fuel.

In her response to the Dow Defendants' motion, she argued that a genuine issue of material fact exists as to whether or not John White was exposed to products manufactured by the Dow Defendants because "[t]he Affidavits of the Asplundh employees indicate that Dow products were used on projects within the relevant time period and the relevant geographical locations."

14

The district court granted the Dow Defendants' renewed motion for summary judgment in an order issued on November 29, 2007. The district court held that, under West Virginia substantive law, which it was required to apply in exercising its diversity jurisdiction over Plaintiff's state law claims pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938), Plaintiff failed to prove the probability of the element of causation.[1] In explaining its conclusion, the district court stated: "In this case there is simply no evidence that Mr. White was ever exposed to Dow products. All that is known is that Mr. White may have been exposed to a variety of herbicides and pesticides while in Asplundh's employ."[2]

Plaintiff filed a timely notice of appeal on December 27, 2007. We have jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291.

---

[1]In its order, the district court explained that "both Asplundh and Dow have only been able to produce documents that go back as far as 1999 and 1997, respectively, due to destruction of documents that would yield this information."

[2]Asplundh filed a motion for summary judgment on October 5, 2007. It was denied as moot on October 19, 2007. Plaintiff and Asplundh filed a petition to approve a settlement agreement on January 25, 2008. It was approved on April 24, 2008.

Plaintiff contends that the district court erred in determining that the evidence presented in opposition to the Dow Defendants' motion for a summary judgment was insufficient to demonstrate that Mr. White was exposed to Dow products. Plaintiff argues that the district court did not view the circumstantial evidence presented in opposition to the motion for summary judgment in the light most favorable to the non-moving party.

We review an appeal from an order granting summary judgment de novo.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004).  We must review the evidence in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing summary judgment must produce "evidence that would support a jury verdict."  Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.

B

Under West Virginia law, a claim for negligence, breach of warranty, and strict liability requires that the element of

16

causation be satisfied.  <u>Tolley v. Carboline Co.</u>, 617 S.E.2d 508, 511-12 (W. Va. 2005) ("<u>Tolley II</u>").[3]  Proximate cause is the "cause which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred."  <u>Johnson v. Mays</u>, 447 S.E.2d 563, 568 (W. Va. 1994).  In toxic exposure cases, providing adequate evidence of exposure is required to prove the element of causation and survive a motion for summary judgment.  <u>See</u> <u>Tolley v. ACF Indus.</u>, 575 S.E.2d 158, 168-69 (W. Va. 2002) ("<u>Tolley I</u>"); <u>Tolley II</u>, 617 S.E.2d at 512-13.

In determining whether sufficient evidence of exposure exists, a plaintiff must present evidence that shows more than a "mere possibility" of exposure.  <u>Tolley I</u>, 575 S.E.2d at 168-69. "In a long line of decisions in this circuit, we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact finder."  <u>Sakaria v. Transworld</u>

---

[3]<u>See</u> <u>Aikens v. Debow</u>, 541 S.E.2d 576, 581 (W. Va. 2000) (discussing requirement of proximate cause in negligence cause of action); <u>City Nat'l Bank of Charleston v. Wells</u>, 384 S.E.2d 374, 382 (W. Va. 1989) (discussing requirement of proximate cause in breach of warranty cause of action); <u>Illosky v. Michelin Tire Corp.</u>, 307 S.E.2d 603, 611 (W. Va. 1983) (discussing the requirement of proximate cause in failure to warn cause of action); <u>Morningstar v. Black & Decker Mfg. Co.</u>, 253 S.E.2d 666, 680 (W. Va. 1979) (discussing requirement of proximate cause in strict liability cause of action).

17

Airlines, 8 F.3d 164, 172-73 (4th Cir. 1993). To meet this evidentiary burden, a plaintiff must demonstrate the amount, duration, intensity, and frequency of exposure. See Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986) ("To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked."); Yeater v. Allied Chem. Co., 755 F. Supp. 1330, 1338 (N.D. W. Va. 1991) (holding that the "intensity of the exposure is a critical factor" when determining whether an employee was exposed); Tolley I, 575 S.E.2d at 169 ("Critical to establishing exposure to a toxic chemical is knowledge of the dose or exposure amount and the duration of the exposure.").

In Tolley I, the plaintiff sued his employer and a number of paint manufacturers alleging that his exposure to paint fumes caused his breathing ailments. 575 S.E.2d at 160-61; Tolley II, 617 S.E.2d at 510-11. The trial court granted summary judgment in favor of the employer. The Supreme Court of Appeals of West Virginia affirmed summary judgment for the employer and later, in Tolley II, affirmed summary judgment for the manufacturers under the theory of collateral estoppel. Tolley I, 575 S.E.2d at 169; Tolley II, 617 S.E.2d at 517. The Supreme Court of Appeals of West Virginia held in each of the Tolley appeals that

18

the plaintiff failed to meet the proximate cause requirement because he was exposed "to at least three different products that can cause his condition." Tolley I, 575 S.E.2d at 168; Tolley II, 617 S.E.2d at 512.

Plaintiff contends that Roehling v. National Gypsum Company, 786 F.2d 1225 (4th Cir. 1986), supports her contention that she presented sufficient evidence to defeat the Dow Defendants' motion for summary judgment. Plaintiff argues that in Roehling, this circuit held that direct evidence was not required to prove that a plaintiff was exposed to an injurious substance.

In Roehling, the plaintiff's co-workers declared that they and the plaintiff "worked in the same areas at the same time adjacent to one another." Id. at 1227. They also testified that they were exposed to the defendants' asbestos-containing products. Id. This court held in Roehling that although the plaintiff "could not himself remember what asbestos products were used in this work area, the witnesses, who handled the materials, have distinct memories: Owens-Illinois and National Gypsum products. Such evidence raises a question of fact as to whether Roehling was exposed to defendants' products." Id. at 1228.

Under Roehling, a plaintiff "need only establish that [he or she] was in the same vicinity as witnesses who can identify

19

the products causing the asbestos dust that all the people in the area, not just the product handlers, inhaled." Id.

Roehling is readily distinguishable from the question presented in this appeal. This court held in Roehling that the circumstantial evidence presented by plaintiff was sufficient to withstand a motion for summary judgment because the plaintiff's co-workers identified the product he was exposed to when he worked with them in the same area and at the same time. Id. Unlike the evidence in Roehling, there is no evidence, direct or circumstantial, that Mr. White was exposed to the Dow Defendants' herbicides.

In her affidavit, Plaintiff alleged that Mr. White smelled like fuel when he returned from work. She did not identify the product that caused the odor as a Dow herbicide. The record shows that Asplundh employees also mixed Krenite, manufactured by DuPont, with diesel fuel. Indeed, Plaintiff alleged that Mr. White reeked of diesel fuel until the early 1990s – well after 1986 when Asplundh stopped mixing herbicides with diesel fuel.

The district court allowed discovery to take place for two years to allow Plaintiff an opportunity to develop facts relating to product identification. Despite having had ample time for discovery, Plaintiff was unable to identify the specific herbicides Mr. White was actually exposed to while working for Asplundh. In the absence of any evidence that Mr.

White was exposed to Dow herbicides, the element of causation was not demonstrated in Plaintiff's opposition to the Dow Defendants' motion for summary judgment.

## V

Because we conclude that Plaintiff's circumstantial evidence was insufficient to demonstrate that there is a real probability that Mr. White was exposed to a Dow product, we must affirm.

<u>AFFIRMED</u>