# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE: ASBESTOS LITIGATION )
                                        )
Limited to:                         )       C.A. No. N19C-07-118 ASB
                                          )
THOMAS J. PEARSONS and       )
DONNA PEARSONS, his wife.      )

Submitted: September 29, 2020
Decided: December 23, 2020

*Upon Defendant Heidelberg USA Inc.'s Motion for Summary Judgment:*
*DENIED in part; GRANTED in part.*

## <u>MEMORANDUM OPINION</u>

Adam Balick, Esquire, Michael Collins Smith, Esquire (Argued), Patrick J. Smith, Esquire of BALICK & BALICK, LLC, Wilmington, Delaware, Bartholomew J. Dalton, Esquire, Ipek Kurul, Esquire, Andrew C. Dalton, Esquire, Michael C. Dalton, Esquire, DALTON & ASSOCIATES, P.A., Attorneys for Plaintiffs.

Timothy A. Sullivan III, Esquire (Argued), of WILBRAHAM, LAWLER & BUBA, P.C., Wilmington, Delaware, Attorney for Defendant Heidelberg USA, Inc..

**Adams, J.**

## I. INTRODUCTION

Thomas Pearsons spent the majority of his career working in the printing shop of the *Vermont Standard*, Vermont's oldest weekly newspaper, where he would perform maintenance on the company's Mergenthaler Model 8 Linotype machine. As part of this process, he would regularly clean the Linotype's mouthpiece, clean the area of the printing shop in which the machine was located, and work on other parts of the machine as needed. His widow, Donna Pearsons ("plaintiff" or "Mrs. Pearsons"), alleges that he was exposed to asbestos when he performed these duties. She further alleges that this exposure was a proximate cause of his mesothelioma.

Defendant Heidelberg USA, Inc. ("Heidelberg"), as successor in interest to Mergenthaler Linotype Company, has moved for summary judgment on the grounds that all of Mrs. Pearsons's claims are barred because: (1) she has failed to develop sufficient evidence to prove causation under Vermont law; (2) Vermont's asbestos-related statute of repose acts as a bar to all of her claims; and (3) that Mr. Pearsons misused the Linotype machine. For the reasons that follow, Heidelberg's motion for summary judgment is **DENIED** on these grounds. Heidelberg also moved for summary judgment specifically on Mrs. Pearsons's claim that it behaved willfully and wantonly. Because she failed to proffer any evidence of such conduct, Heidelberg's motion for summary judgment is **GRANTED** on this specific claim.

## II.    BACKGROUND

A. Facts[1]

Thomas Pearsons ("Mr. Pearsons") worked at the *Vermont Standard* from 1964 until 1988.  From 1964-1965, Mr. Pearsons worked part-time, approximately 20 hours a week.  Mr. Pearsons worked full-time at the paper from 1965 until 1988, approximately 40-45 hours a week.  Mr. Pearsons started as an apprentice, where he learned to operate and maintain a Mergenthaler Model 8 Linotype machine.  Mr. Pearsons continued this work throughout his career at the *Vermont Standard*.

During Mr. Pearsons's career, he performed various maintenance duties on the Linotype.  One job was cleaning the Linotype mouthpiece by rubbing an asbestos cleaning tool across the mouthpiece.  While cleaning, Mr. Pearsons inhaled the asbestos dust that was created as the asbestos end of the tool disintegrated.  The tool needed to be replaced periodically.  Mr. Pearsons's maintenance work also included replacing the Linotype's mouthpiece every two to four years.  This required Mr. Pearsons to scrape out old asbestos and mix new asbestos with water and pack it on the mouthpiece.  This process also caused him to breathe in asbestos dust.[2]

---

[1] The following facts are set forth in the light most favorable to plaintiff Donna Pearsons, as the non-moving party.

[2] Mr. Pearsons knew the material was asbestos because the bag it came in was labeled "asbestos."  According to Mr. Pearsons, Mergenthaler supplied the asbestos and other replacement parts and materials associated with the Linotype.

Mr. Pearsons also performed general maintenance on the Linotype and cleaned the room where the machine was located. Mr. Pearsons swept dust and shavings that accumulated under the machine every night, including dust from the disintegrating asbestos-containing cleaning tool. Mr. Pearsons's weekly maintenance duties included pulling the mats out of the machine and brushing dust out of the magazine. He also swept after cleaning or replacing a part on the machine.

Mr. Pearsons performed less frequent tasks on the Linotype, including changing the throat heater and changing the crucible heater, which both involved a process similar to replacing asbestos in the mouthpiece. Mr. Pearsons also changed the throat heater on the Linotype "several times" and changed the crucible heater at least once during his career at the *Vermont Standard*. His work with the throat heater and crucible heater also involved replacing asbestos wires, which were cracked and brittle and had asbestos flaking off. This caused him to inhale asbestos dust.

Mr. Pearsons passed away on October 20, 2019 from mesothelioma at the age of seventy-two.

B. <u>Procedural Background</u>

Thomas and Donna Pearsons filed the Complaint on July 16, 2019 alleging negligence, willful and wanton conduct, strict liability, and loss of consortium.[3] A wrongful death claim was subsequently added after Mr. Pearsons's passing via

---

[3] Dkt. 1.

Amended Complaint, filed on April 15, 2020 by Mrs. Pearsons.[4]  Heidelberg filed

its Motion for Summary Judgment (the "Motion") on February 12, 2019.[5]  The Court

held oral argument on the Motion on May 5, 2020.[6]  The Court ordered additional

briefing on the application of 12 V.S.A. § 518(a), Vermont's asbestos-related statute

of repose, as related to the facts of this case and held additional oral argument on

September 29, 2020.[7]

## III.  STANDARD

The standard of review on a motion for summary judgment is well-settled.

When considering a motion for summary judgment, the Court's principal function

is to examine the record to determine whether genuine issues of material fact exist,

"but not to decide such issues."[8]  Summary judgment will be granted if, after viewing

the record in a light most favorable to a non-moving party, no genuine issues of

material fact exist and the moving party is entitled to judgment as a matter of law.[9]

Summary judgment will not be granted, however, if the record reveals that material

facts are in dispute, or if the factual record has not been developed thoroughly

---

[4] Dkt. 36.

[5] Dkt. 27.

[6] *See* Dkt. 37.

[7] *See* Dkt. 46.

[8] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99–100 (Del. 1992) (internal citations omitted).

[9] *Merrill*, 606 A.2d at 99–100.

enough to allow the Court to apply the law to the factual record.[10] The moving party

bears the initial burden of demonstrating that the undisputed facts support his claims

or defenses.[11] "If the motion is properly supported, then the burden shifts to the non-

moving party to demonstrate that there are material issues of fact for resolution by

the ultimate fact-finder."[12]

## IV. ANALYSIS

In her Amended Complaint, plaintiff asserts five causes of action: negligence,

willful and wanton conduct, strict product liability, loss of consortium and wrongful

death. Heidelberg asserts that it is entitled to summary judgment on all of its claims

because: (1) plaintiff has not established causation under Vermont law; (2) all of

plaintiff's claims are barred by Vermont's asbestos-related statute of repose; and (3)

Mr. Pearsons misused the Mergenthaler Linotype machine. For the reasons stated

herein, Heidelberg's motion for summary judgment is denied on all three grounds.

Heidelberg also argues that is entitled to summary judgment on plaintiff's claim of

willful and wanton conduct because plaintiff has failed to demonstrate any evidence

of such conduct. Heidelberg's motion is granted on this claim.

    A. <u>Plaintiff Has Submitted Sufficient Evidence to Establish Causation under Vermont Law</u>

---

[10] *In re Asbestos Litig.,* 2007 WL 2410879, at *2 (Del. Super. Aug. 27, 2007) (citing *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962)).
[11] *Id.* (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979)).
[12] *Id.* at *2.

6

Where an injury is brought about by multiple causes or exposures, a plaintiff must show that the defendant's conduct was a substantial factor in causing the injury.[13] Vermont substantive law requires a plaintiff to "point to the evidence suggesting a probability, rather than a mere possibility" that "(1) he was exposed to the specified chemical at a level that could have caused his physical condition (general causation); and (2) the exposure to that chemical did in fact result in the condition (specific causation)."[14] Specific causation is demonstrated "by submitting evidence concerning the amount, duration, intensity, and frequency of exposure."[15]

Viewing the record in the light most favorable to plaintiff, it shows that Mr. Pearsons was exposed to defendant's products while employed at the *Vermont Standard* in a greater than *de minimis* fashion from 1964 until 1967, when § 518(a) was enacted. Mr. Pearsons worked 20 hours per week until 1965, and then worked full time at 40 hours per week for the rest of his career. Mr. Pearsons testified that he used an asbestos-cleaning tool "a couple times a day" and cleaned under the

---

[13] *See Lorrain v. Ryan*, 628 A.2d 543, 547–48 (Vt. 1993) (citing *Woodcock's Adm'r v. Hallock*, 127 A. 380, 382 (1925); Restatement (Second) of Torts § 434 (Am. L. Inst. 1965).

[14] *See Blanchard v. Goodyear Tire and Rubber*, 30 A.3d 1271, 1274 (Vt. 2011) (citing *Golden v. CH2M Hill Hanford Group, Inc.*, 528 F.3d 681, 683 (9th Cir. 2008); *White v. Dow Chem. Co.*, 321 Fed. Appx. 266, 273 (4th Cir. 2009); *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 898 (8th Cir. 2008); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 172–73 (4th Cir. 1993)).

[15] *Dakers v. Bartow*, 2018 WL 8415310, at *7 (D. Vt. 2018) (quoting *Blanchard*, 30 A.3d at 1271)).

7

machine nightly from the time he started at the *Vermont Standard* in 1964 until the enactment of § 518(a) in 1967. Accordingly, plaintiff has submitted sufficient evidence of greater than *de minimis* exposure to asbestos prior to the enactment of § 518(a) in 1967, satisfying the substantial factor causation standard at the summary judgment stage.[16]

B. Plaintiff's Claims Are Not Barred by Vermont's Statute of Repose

Heidelberg argues that 12 V.S.A. § 518(a),[17] Vermont's asbestos-related statute of repose, serves as a bar to all of plaintiff's claims. A statute of repose, unlike a statute of limitations, can serve as an absolute bar to a plaintiff's claim by

---

[16] *See Lorrain*, 628 A.2d at 546–48. Heidelberg also argues that Mrs. Pearsons failed to satisfy the causation standard under Vermont law because she did not submit requisite expert evidence of the amount, duration, intensity and frequency of Mr. Pearsons's exposure to Defendant's allegedly asbestos-containing products. Defendant asserts that Dr. Ginsburg's expert report is insufficient and that Mrs. Pearsons must provide a corresponding opinion from an industrial hygienist. Vermont law, however, permits expert testimony to be based on circumstantial evidence of exposure level. *See Blanchard v. Goodyear Tire and Rubber*, 30 A.3d 1271, 1275 (Vt. 2011). Plaintiff's medical expert report sufficiently provided evidence of both general and specific causation, appropriately founded upon Mr. Pearsons's testimony regarding his work with asbestos-containing products.

[17] Section 518(a) provides:

> An action to recover for ionizing radiation injury or injury from other noxious agents medically recognized as having a prolonged latent development shall be commenced within three years after the person suffering the injury has knowledge or ought reasonably to have knowledge of having suffered the injury and of the cause thereof, ***but in no event more than 20 years from the date of the last occurrence to which the injury is attributed.***

12 V.S.A. § 518(a) (emphasis added).

"prohibit[ing] a cause of action from coming into existence."[18] Under Vermont law, if a plaintiff can show that a defendant's alleged negligent acts or omissions occurred before the enactment of a statute of repose, then the plaintiff's right to recover vested prior to the statute's enactments.[19] A right is vested when it is "complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy."[20] Plaintiff's claims are not barred by § 518(a) because Mr. Pearson's right to recovery vested prior to the enactment of the statute.[21]

Because the Court has determined that plaintiff has demonstrated that Mr. Pearsons was exposed to Heidelberg's products in a greater than *de minimis* fashion from 1964 until 1967, Mr. Pearsons's right to recover vested during this period. In *Lillicrap v. Martin*, the Supreme Court of Vermont found that the State's medical malpractice statute of repose, enacted in 1978, did not bar plaintiff's claims because plaintiff's injury occurred in 1972.[22] Similarly here, given the timing of Mr. Pearsons's injuries, the repose period does not bar plaintiff's claims and Heidelberg's Motion is denied on this ground.

---

[18] *CTS Corporation v. Waldburger*, 573 U.S. 1, 16 (2014).
[19] *Lillicrap v. Martin*, 591 A.2d 41, 48 (Vt. 1989).
[20] *Lillicrap*, at 49 (Vt. 1989) (quoting Black's Law Dictionary 1402 (5th ed. 1979)).
[21] Because the Court finds that plaintiff's claim vested prior to the enactment of the statute, the Court need not address the issue of constitutionality of Vermont's statute of repose. *See Lillicrap v. Martin*, 591 A.2d at 48.
[22] *Lillicrap v. Martin*, 591 A.2d at 48.

C. A Genuine Issue of Material Fact Exists as to whether Mr. Pearsons Misused the Mergenthaler Linotype Machine

Heidelberg has not met its initial burden of demonstrating that the undisputed facts support its claim of product misuse. Defendant relies on Greg Timko's expert testimony, which focuses primarily on internally-located pot insulation,[23] to show that Mr. Pearsons misused the Mergenthaler Linotype machine. Timko testified that any asbestos-containing insulation was located internally, within the pot assembly and sealed under steel between the crucible and outer pot jacket.[24] Timko also submitted an affidavit whereby he swore that neither the mouthpiece nor the throat were insulated as manufactured and sold, and insulation "was not specified or required" for either of these parts to properly function.[25]

Mr. Pearsons's testimony surrounding his work, however, shows that there is a material dispute of fact as to whether he misused the Mergenthaler Linotype machine. Mr. Pearsons testified that he learned how to clean, maintain, and operate the Linotype at the *Vermont Standard* through a four-year, supervised apprenticeship program and then continued this work for the duration of his career.[26] He testified that all of the asbestos-containing materials he used in connection with the Linotype

---

[23] *See* Def.'s Ex. E–F. All exhibit references in this section are to either Heidelberg's Motion for Summary Judgment ("Def.'s Ex. __") or Plaintiff's Memorandum in Opposition to Heidelberg's Motion for Summary Judgment ("Pl.'s Ex. ___").
[24] Def.'s Ex. F at ¶ 12.
[25] Def.'s Ex. F at ¶¶ 13–14.
[26] Pl.'s Ex. A at 52:19–53:12; Pl.'s Ex. B. at 11:18-24.

came from Mergenthaler.[27]  And, as discussed above, he testified to multiple sources of asbestos exposure from Defendant's products, corroborated by excerpts of the Mergenthaler Special Supplies Catalog, the Linotype Instruction Book, and the Linotype Maintenance Manual.[28]  Summary judgment is, therefore, is denied on product misuse grounds.

D. <u>Plaintiff Has Failed to Demonstrate Evidence of Willful and Wanton Conduct</u>

Mrs. Pearsons failed to contest Heidelberg's Motion with respect to her claim for punitive damages for willful and wanton conduct.  As such, Heidelberg's motion for summary judgment is granted with respect to this claim.

## V.     CONCLUSION

For the foregoing reasons, Heidelberg's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

**IT IS SO ORDERED**.

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

Dated: December 23, 2020

---

[27] Pl.'s Ex. A at 68:1-10; Pl.'s Ex. B at 37:19-25.
[28] *See* Pl.'s Ex. C–E.

11