591 S.E.2d 106

**Violet NAPIER, Petitioner Below, Appellee,**

v.

**The BOARD OF EDUCATION OF the COUNTY OF MINGO, Respondent Below, Appellant.**

**No. 31117.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2003.

Decided Oct. 10, 2003.

Maynard, J., concurred.

McGraw, J., dissented.

Harry M. Rubenstein, Kelly J. Kimble, Kay Casto & Chaney, PLLC, Morgantown, for the Appellant.

John Everett Roush, West Virginia School Service Personnel Association, Charleston, for the Appellee.

PER CURIAM:

The appellant herein and respondent below, the Board of Education of the County of Mingo [hereinafter referred to as "the Board"], appeals from an order entered May 31, 2002, by the Circuit Court of Kanawha County. By the terms of that order, the circuit court reversed the July 13, 2000, decision of the West Virginia Education and State Employees Grievance Board [hereinafter referred to as "the Grievance Board"] and found that W. Va.Code § 18A–4–8a(7) (1999) (Supp.1999) prohibited the Board from altering the daily work schedule of its employee, the appellee herein and petitioner below, Violet Napier [hereinafter referred to as "Ms. Napier"], without her written con-

sent thereto. Upon a review of the parties' arguments, the record submitted for our consideration, and the pertinent authorities, we reverse the decision of the Kanawha County Circuit Court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

During its consideration and review of this grievance, the circuit court adopted the following facts found by the Grievance Board's administrative law judge at the Level IV hearing. Ms. Napier is employed by the Board as a special education aide. As such, her duties include (1) the assignment to, and riding of, a specific Mingo County school bus to assist special needs students traveling to and from school and (2) the assignment to a particular school where she has various classroom responsibilities.[1] At the beginning of the 1999–2000 school year, Ms. Napier was assigned to Bus Number 9607, which transported students to and from Burch Middle School and Burch High School. Her daily work schedule required her to meet and board the bus at Burch High School at approximately 7:20 a.m. and to assist students on the five-minute ride to Burch Middle School.[2] Once at the middle school, to which school Ms. Napier was assigned, she performed classroom duties until 2:45 p.m., at which time she boarded Bus Number 9607 for the return trip to Burch High School. Upon arriving at the high school at approximately 2:50 p.m., Ms. Napier disembarked from the bus, and her workday ended.[3]

Thereafter, in October, 1999, the Board learned that two additional special needs students would be requiring school bus transportation to the middle and high schools. To accommodate these students, the three special education aides affected by this situation cooperatively coordinated their bus-riding schedules.[4] As a result of these changes, the aide who earlier rode to the high school transferred to another bus, and Ms. Napier boarded the bus at Taylorville at 7:10 a.m. to accompany students to Burch High School. Upon arriving at the high school, Ms. Napier resumed her previous duties assisting students traveling to the middle school and fulfilling her classroom obligations at Burch Middle School. In the afternoon, Ms. Napier remained on the bus when it arrived at the high school, and disembarked shortly thereafter when it reached Taylorville at 2:55 p.m. Thus, the October, 1999, student additions extended Ms. Napier's workday by approximately fifteen minutes. It does not appear from the record that Ms. Napier objected to these schedule changes.

In December, 1999, yet another special needs student began riding Bus Number 9607. Transportation Director Bill Kirk [hereinafter referred to as "Mr. Kirk"] informed Ms. Napier that she would need to board the bus at Hannah Lumber at 6:40 a.m. in order to assist said student, and would return to Hannah Lumber after the student had been taken home at 3:10 p.m. This new arrangement caused Ms. Napier's daily work schedule to be lengthened by an additional forty-five minutes, or approximately one hour over the daily schedule she followed at the beginning of the 1999–2000 school year. Ms. Napier complained about

1. For a recitation of Ms. Napier's specific job duties that are at issue in this appeal, see *infra* Section III.

2. Ms. Napier was not required to earlier board the bus to assist students traveling to Burch High School because another special education aide was assigned to ride the bus to the high school. Because the other aide was assigned to the high school for classroom duties, though, Ms. Napier was needed to assist the students on the bus who attended the middle school.

3. According to the facts found by the Grievance Board, Bill Kirk [hereinafter referred to as "Mr. Kirk"], the Transportation Director for Mingo

County Schools, originally had scheduled Ms. Napier to board the bus at Taylorville, ride it to Burch High School, and continue on to Burch Middle School. Because another special education aide would already be on the bus for the ride to the high school, however, Mr. Kirk determined that Ms. Napier's services were not needed until the bus reached Burch High School. Ms. Napier disputes that her original daily schedule required her to board the bus at Taylorville.

4. In accordance with these increased duties, the Board offered overtime pay to those aides who, as a result of the schedule change, would be required to work more than eight hours per day.

these adjustments and met with various officials of Mingo County Schools to resolve the matter, objecting to the extended work schedule and refusing to accept overtime pay for her increased duties. Mr. Kirk was then instructed to adjust Ms. Napier's assignment so that her daily schedule would not necessitate overtime pay.

As a result of Ms. Napier's objections, her schedule was changed to allow her to meet the new student at the student's home at Musick at 7:05 a.m. and to disembark the bus at the student's home in the afternoon at 3:10 p.m. Thus, Ms. Napier's workday was lengthened, as compared to her original schedule at the start of the academic year, by approximately thirty-five minutes. Despite these schedule modifications permitting her to board the bus at the student's home, Ms. Napier continued her objections to her altered daily schedule. As a result, Ms. Napier filed a grievance against her employer, the Board, on December 7, 1999, which was denied at Level I on December 14, 1999. In her grievance, Ms. Napier alleged that her daily work schedule had been altered in violation of W. Va.Code § 18A–4–8a(7) (1999) (Supp.1999),[5] which provides that "[n]o service employee may have his or her daily work schedule changed during the school year without the employee's written consent, and the employee's required daily work hours may not be changed to prevent the payment of time and one-half wages or the employment of another employee."[6]

On February 22, 2000, following a Level II hearing, Ms. Napier's grievance was again denied. Ms. Napier then by-passed Level III and appealed directly to the Grievance Board.[7] By decision rendered July 13, 2000, at Level IV, the Grievance Board found in favor of the Board, ruling that

[n]otwithstanding the language in *W. Va. Code* § 18A–4–8a, restricting changes in a service employee's daily work schedule, a county board of education must have freedom to make reasonable changes to a service employee's daily work schedule, within the parameters of her contract, some of which cannot reasonably be effected until shortly after school starts.

(Citations omitted). Following this adverse decision, Ms. Napier appealed to the Circuit Court of Kanawha County. By order entered May 31, 2002, the circuit court reversed the Grievance Board's ruling. In its decision, the court observed that

the decision to alter the petitioner's [Ms. Napier's] work schedule on two separate occasions is contrary to the express language of § 18A–4–8a. Nothing in that section indicates that the legislature contemplated any exception to this statutory prohibition. The statutory prohibition against changing an employee's work schedule is expressed in absolute terms.

From this ruling, the Board appeals to this Court.

## II.

## STANDARD OF REVIEW

On appeal to this Court, the Board requests us to determine whether the circuit court properly reviewed the Grievance Board's decision, which interpreted the governing statutory law and applied it to the facts of the case *sub judice*. W. Va.Code § 18–29–7 (1985) (Repl. Vol. 2003) provides the grounds upon which a decision of the Grievance Board may be reviewed for error:

---

**5.** Since the time of the events at issue in this appeal, the subject statutory provision has been recodified; however, the pertinent language of this statute remains unchanged from the prior version thereof. *Compare* W. Va.Code § 18A–4–8a(8) (2002) (Supp.2003) *with* W. Va.Code § 18A–4–8a(7) (1999) (Supp.1999).

**6.** Additionally, Ms. Napier claimed that she had been assigned to more than one school in violation of W. Va.Code § 18–20–1c (1995) (Repl. Vol. 2003). *See* W. Va.Code § 18–20–1c(5) (directing that "aides in the area of special education can-

not be reassigned to more than one school without the employee's consent"). This argument has been rejected at every grievance level and by the circuit court. As neither of the parties assign error to these rulings, we will not further consider this issue.

**7.** Grieved employees are permitted to choose between an appeal from Level II to Level III or an appeal from Level II directly to the Grievance Board. *See* W. Va.Code § 18–29–4(c) (1995) (Repl. Vol. 2003).

The decision of the hearing examiner [of the West Virginia Education and State Employees Grievance Board] shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.…

The court may reverse, vacate or modify the decision of the hearing examiner or may remand the grievance to the chief administrator of the institution for further proceedings.

Accordingly, we previously have held that

[g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. *Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.*

Syl. pt. 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000) (emphasis added). *See also* Syl. pt. 1, *Cowen v. Harrison County Bd. of Educ.*, 195 W.Va. 377, 465 S.E.2d 648 (1995) ("No deference is given to conclusions of law of an administrative law judge or a circuit court, so that the standard of judicial review by this Court is de novo."). *Accord* Syl. pt. 2, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999) ("Although we accord great deference to the findings of fact of the West Virginia Educational Employees Grievance Board, we review, *de novo*, questions of law."). Because the sole issue presented in the instant appeal involves a question of law, we will apply a *de novo* standard of review. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

### III.

### DISCUSSION

The instant appeal requests this Court to determine whether W. Va.Code § 18A–4–8a(7) permits a county board of education to modify a service employee's daily work schedule without the employee's consent. In support of its argument, the Board contends that its alteration of Ms. Napier's schedule was proper in light of the itinerant nature of her position as a special education aide. Because such aides are assigned to a particular school bus, rather than to a certain student or students, it is plausible that an aide's daily bus schedule could fluctuate if the students riding that particular bus change. Ms. Napier disputes the Board's interpretation of this statute, however, and asserts that the circuit court correctly found that the language of W. Va.Code § 18A–4–8a(7) clearly states that a service employee's daily work schedule cannot be changed during the school year without his/her written consent. In order to resolve this matter, then, it is necessary for us to determine the meaning of the subject statutory provision and how it applies to the facts at issue in the instant appeal.

When presented with a matter of statutory interpretation, this Court typically first looks to the precise language employed by the Legislature in order to determine the meaning of the controverted statute. "We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630, 474 S.E.2d 554, 560 (1996) (internal quotations and citation omitted) (footnote omit-

ted). Thus, where the language is plain, we do not interpret the statute, but rather apply the statute as written. " 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997). *Accord* Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

 Neither will we construe a statute to achieve an absurd result. Rather,

"[i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

Syl. pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W.Va. 631, 567 S.E.2d 641 (2002). Therefore, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938).

 Finally, although a statute's language may be plain, there may arise circumstances in which we must nevertheless take notice of the logical inferences that may be gleaned from the statutory language at issue. Hence, " '[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' *Syllabus* point 14., *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." Syl. pt. 4, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. pt. 5, *Ex parte Watson*, 82 W.Va. 201, 95 S.E. 648

(1918) ("In the interpretation of statutes, words and phrases therein are often limited in meaning and effect, by necessary implications arising from other words or clauses thereof.").

 Applying these principles to the case *sub judice* requires us to examine the statutory language at issue herein. W. Va.Code § 18A–4–8a(7) (1999) (Supp.1999) directs that "[n]o service employee may have his or her daily work schedule changed during the school year without the employee's written consent, and the employee's required daily work hours may not be changed to prevent the payment of time and one-half wages or the employment of another employee." Based upon our reading of this statute, we find the language to be plain and free of ambiguity. Thus, we must then consider how this statutory language applies to the facts of this proceeding.

Ms. Napier, the aggrieved school employee at the center of this case, is employed by the Board as a special education aide. Among her specified job duties are (1) the assignment to, and riding of, a specific Mingo County school bus to assist special needs students traveling to and from school and (2) the assignment to a particular school where she has various classroom responsibilities. Of particular relevance to the instant appeal, Ms. Napier's school bus duties, as defined in her special education aide job description, require her to "[p]articipate in specialized transportation component of I[ndividualized].E[ducation].P[lan].'s providing for the health, safety and physical needs of students during transportation to/from schools." Such duties are defined more specifically in a policy statement, which the Board adopted several years before hiring Ms. Napier, which directs that a special education aide's

[t]ransportation duties will include:
— the loading and un-loading of students
— assistance to and from the school building when specified
— special needs in transit
— discipline under the guidance of school administrators [and] teacher(s) and in compliance with federal, state and county policies
— administering medication

— proper seating arrangements

— above all *CONFIDENTIALITY*[.]

A subsequent amendment to this policy explains that

Special Education aides will be required to assist with specialized transportation as a component of the job. All aides will be assigned to a driver and bus at the beginning of [the] school term and assist through the duration of a school year, when the need arises. *If enrollment changes and students are identified, whose I.E.P. requires specialized transportation, the aide assigned to the driver and bus will assist anytime during the year.*

(Emphasis added).

Insofar as Ms. Napier's position requires her to be assigned to a specific bus to assist the special needs students riding said bus, it may be said that her daily schedule corresponds to, or is commensurate with, the daily route of the bus to which she is assigned. As such, the duration of Ms. Napier's workday is defined by the daily schedule of Bus Number 9607. Thus, the Board acted within its authority when it required Ms. Napier to meet the bus at Musick, in order to attend to a student's needs, instead of at Burch High School, as it earlier had instructed her to do.[8] Moreover, to the extent that Ms. Napier's job is solely to care for the special needs students to whom she is assigned, it is entirely plausible that her daily schedule would not be static throughout the school year but might be adjusted, within the confines of Bus Number 9607's daily route, in order to permit her to accommodate fewer or greater numbers of students as their needs dictate. Therefore, because the Board did not change Ms. Napier's work schedule in violation of W. Va.Code § 18A–4–8a(7), we find that the circuit court committed reversible error by rendering its contrary ruling.

### IV.

### CONCLUSION

For the foregoing reasons, the May 31, 2002, order of the Kanawha County Circuit Court is hereby reversed.

Reversed.

---

8. If Ms. Napier's extended commute necessitated by this additional student causes the duration of her workday to exceed eight hours, she presum-

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

ably would then be entitled to overtime pay therefor. *See generally* W. Va.Code § 18A–4–8a.