No. 22-0094 – *Lloyd Franklin Ransom, Jr. v. Guardian Rehabilitation Services, Inc., and Guardian Elder Care at Fairmont, LLC*

**FILED**
**June 13, 2023**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Wooton, Justice, dissenting:

I respectfully dissent from the majority's opinion, which gives the petitioner, Loyd Franklin Ransom, Jr., an opportunity to completely reboot his lawsuit on remand by litigating a different cause of action from the one that was articulated in his complaint,[1] made a basis for his motion for partial summary judgment, or supported by even a scintilla of evidence in the proceedings below.

I begin by noting that in its haste to save the day for the petitioner, the majority relegated to a footnote its discussion of the cross-assignment of error made by the respondents, Guardian Rehabilitation Services, Inc. and Guardian Eder Care at Fairmont, LLC, that the petitioner's appeal was not timely perfected. In my view, this cross-assignment of error presented a substantial question of law that merited far more attention than it was given, inasmuch as the indisputable fact is that the appeal was *not* timely

[1] As the majority notes, the only cause of action upon which the circuit court ruled, and thus the only cause of action before this Court, was the petitioner's claim that in terminating his employment, the respondents violated the prohibition set forth in West Virginia Code § 61-7-14(d)(3)(B) (2020), which provides that "[n]o employer may condition employment upon . . . (B) [a]n agreement with an employee or a prospective employee prohibiting that natural person from keeping a legal firearm locked inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes."

perfected; the judgment order from which the petitioner appealed was entered on October 8, 2021, and the appeal was not perfected until May 9, 2022, seven months later – thirty days past the farthest possible time limit permitted by statute and under this Court's rules. West Virginia Rule of Appellate Procedure 5(f) provides:

> An appeal must be perfected within four months of the date the judgment being appealed was entered in the office of the circuit clerk; provided, however, that the circuit court . . . or the Supreme Court may, for good cause shown, by order entered of record, extend such period, *not to exceed a total extension of two months*, if a complete notice of appeal was timely and properly filed by the party seeking the appeal.

(Emphasis added); *accord* W. Va. Code § 58-5-4 (2020) ("No petition shall be presented for an appeal from any judgment rendered more than four months before such petition is filed with the clerk of the court where the judgment being appealed was entered: Provided, That the judge of the circuit court may, prior to the expiration of such period of four months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of two months, for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order."). And although the petitioner points to the fact that he filed a new notice of appeal after the circuit court's grant of a Rule 60(a) motion[2] on January 10, 2022, it seems clear that the filing of this

[2] West Virginia Rule of Civil Procedure 60(a) provides a mechanism by which a clerical mistake in an order may be corrected by the circuit court. A clerical error is one "which is of no import to the matters to be dealt with on review." *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 213 (1952).

motion did not toll the running of the appeal time inasmuch as it is well established that the filing of a Rule 60(b)[3] motion does not toll those time limits. *See Rose v. Thomas Mem'l Hosp. Found., Inc*., 208 W. Va. 406, 411, 541 S.E.2d 1, 6 (2000).

Critically, we have held that a petitioner's failure to timely perfect his appeal "deprives the Court of jurisdiction to hear an appeal." *State v. Gamble*, No. 18-0654, 2020 WL 5798229, at *2 (W. Va. Sept. 29, 2020) (memorandum decision) (citing *In re E.P.*, No. 13-0782, 2014 WL 1302458, at *3 (W. Va. Mar. 31, 2014) (memorandum decision) and *Boardwine v. Kanawha Charleston Humane Ass'n*, No. 13-0067, 2013 WL 5989159, at *2, n.2 (W. Va. Nov. 12, 2013) (memorandum decision)). Therefore, the majority's decision to hear and decide this case on the merits, despite the petitioner's failure to timely perfect his appeal, must be read in one of two ways: that a party's failure to timely perfect his or her appeal is not jurisdictional, thus *sub silentio* overruling *Gamble*; or that Rule 2 of the West Virginia Rules of Appellate Procedure[4] can cure even a jurisdictional defect.

---

[3] West Virginia Rule of Civil Procedure 60(b) provides a mechanism by which a party may be relieved from a final order for reasons of mistake, inadvertence, excusable neglect, unavoidable cause, newly discovered evidence, fraud, or "any other reason justifying relief from the operation of the judgment."

[4]Rule 2 provides that

> [i]n the interest of expediting decision, or for other good cause shown, the Supreme Court may suspend the requirements or provisions of any of these Rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.

I strongly believe that wherever possible, litigants should have the right to full appellate review of their cases, and that the "substantial justice" provision of Rule 2 should be liberally applied to achieve that end. However, questions of jurisdiction are so fundamental – going to the very heart of our ability to hear a case – that they should not be buried in footnotes. If we are going to overrule our precedents or expand the ambit of our jurisdiction to cases where we arguably have none, then we should do so by giving the issue in-depth consideration and then crafting a syllabus point for the guidance of the Bar.

In its consideration of the merits of the appeal, the majority begins to reinvent history in this case by making two critical findings of fact. The first is that "[the respondents' representatives] told Mr. Ransom that he was fired for violating a company policy that prohibited the possession of firearms on company premises." But the respondents specifically denied this, stating that "[petitioner] was told he was fired for having a *visible* firearm in his car." (Emphasis added). This is a distinction with a difference, *see* text *infra*, and the majority's factfinding – it accepts the petitioner's account of the facts while ignoring the respondents' differing account – is in clear violation of an essential principle of appellate review: "An appellate court may not ... weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va.

> These Rules shall be construed to allow the Supreme Court to do substantial justice.

657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) (citation omitted). The eminent scholar Justice Franklin D. Cleckley explained in *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996), that

> [w]ere we given the task, we would not hesitate to find that the record before this Court demonstrates overwhelmingly that adverse possession has been proven by clear and convincing evidence. However, our decisions have made plain that *an appellate court is not the appropriate forum for a resolution of the persuasive quality of evidence*.

*Id*. at 565, 474 S.E.2d at 495 (emphasis added).

The majority's second finding of fact, which comes immediately after the first and purports to explain the alleged company "policy," is that "Guardian's employee handbook provided that employees 'may not bring any of the following onto the business property: Firearms or weapons of any kind.'" However, neither the handbook nor even the page or pages containing the language quoted by the majority was ever made a part of the evidentiary record in this case. Rather, the language quoted by the majority appears only in the petitioner's memorandum of law in support of his motion for summary judgment; the handbook purporting to contain the language was not appended as an exhibit.[5] The only other mention of a handbook in the record of this case was contained in the petitioner's

[5] That the statements of counsel are not evidence needs no citation of authority. Every jury in every case in this State is so instructed.

affidavit,[6] in which he says that "I was fired solely because I had a firearm in my locked car, and the [respondents'] handbook completely prohibited the possession of the firearm on company property[,]" and that "[t]he Guardian companies gave me an Employee Handbook entitled 'Personnel Policies Handbook 2017', dated April 1, 2017, issued by Guardian Rehabilitation (the parent company of Gurdian [sic] Elder Care." Again, the handbook was not appended to the affidavit, and the petitioner gave no indication as to when he received it – at the time he was hired, at the time he was terminated, at some point

---

[6] The respondents make a strong argument – again, one which is simply ignored by the majority – that this was a "sham" affidavit that failed to meet the test set forth in *Kiser v. Caudill*, 215 W. Va. 403, 599 S.E.2d 826 (2004):

> (1)Whether the deposition afforded the opportunity for direct and cross-examination of the witness; (2) whether the witness had access to pertinent evidence or information prior to or at the time of his or her deposition, or whether the affidavit was based upon newly discovered evidence not known or available at the time of the deposition; and (3) whether the earlier deposition testimony reflects confusion, lack of recollection or other legitimate lack of clarity that the affidavit justifiably attempts to explain.

215 W. Va. at 405, 599 S.E.2d at 828, Syl. Pt. 4, in part; *see also Tolley v. Carboline Co.*, 217 W. Va. 158, 617 S.E.2d 508 (2005) (to similar effect). I agree with the respondents that the petitioner's last-second affidavit fails to meet this test, although I share the view of the concurring justice in *Tolley* that characterizing an affidavit as "sham" is a factual credibility determination that cannot properly be made by an appellate court. *See Tolley*, 217 W. Va. at 167, 617 S.E.2d at 517 (Starcher, J., concurring) ("Any time a judge decides that a piece of evidence is a 'sham,' the judge is making a factual credibility determination.").

in between, or at some other time – let alone as to whether his employment was conditioned upon his agreement to refrain from keeping a legal firearm locked inside or locked to a motor vehicle in a parking lot when the firearm is kept for lawful purposes. *Id.* § 61-7-14(d)(3)(B). In short, all that was established by the petitioner's evidence was that the respondents had a handbook, and that at the time of his termination their representatives told him that it completely prohibited the possession of a firearm on company property. None of this has any relevance to the key issue as framed by the majority: whether the petitioner's employment was *conditioned on his agreement* to the alleged prohibition contained in the handbook. *Cf. Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 66, 459 S.E.2d 329, 343 (1995) ("the plaintiff failed to put into dispute an essential element of his cause of action, i.e., that he knew of the handbook and accepted its terms by continuing in the defendant's employ.").

Having thus set the stage for the petitioner's reboot of his case by making these findings of fact, the majority barely acknowledges the basis of the circuit court's judgment: that this case is controlled by West Virginia Code § 61-7-14(d)(1)(b), which provides that

> (d) *Prohibited acts.* – Notwithstanding the provisions of subsections (b) and (c) of this section:
>
> (1) No owner, lessee, or other person charged with the care, custody, and control of real property may prohibit any customer, *employee*, or invitee from possessing any legally owned firearm, when the firearm is:
>
> (A) Lawfully possessed;
>
> (B) Out of view;

> (C) Locked inside or locked to a motor vehicle in a parking lot; and
>
> (D) When the customer, *employee*, or invitee is lawfully allowed to be present in that area.

(Emphasis added). In this regard, the respondents' defense, reduced to its essence, was that the petitioner's firearm, which he brought to the workplace in his vehicle and attempted to cover with a jacket and a "soft-type laptop cover," was nonetheless visible to others, *see id.* § 61-7-14(d)(1)(B); therefore, the respondents claim, they were entitled to impose whatever discipline they deemed appropriate, up to and including termination.[7] The

[7] In opposition to the respondents' defense, and its motion for summary judgment, the petitioner's primary argument was that whether or not a firearm is "out of view" depends on how far away the viewer is from it. In support of this argument, the petitioner stated in his deposition testimony that "[an observer] should not have been able to see [my rifle] unless they had their face up against the window and were looking in[,]" which the circuit court characterized, and rejected, as an "argument that there's a continuum what would be claimed something that's concealed when something's in view[.]" I agree with the circuit court, as nothing in the language of the statute indicates that the Legislature intended the words "out of view" to have anything other than their everyday, accepted meaning: if something is "out of view," it cannot be seen with the naked eye from any distance or vantage point. In this regard, it is well established in our law that

> "'[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.' Thus, where the language is plain, we do not interpret the statute, but rather apply the statute as written. 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.'"

*Napier v. Bd. of Educ. of Cnty. of Mingo*, 214 W. Va. 548, 552-53, 591 S.E.2d 106, 110-11 (2003) (citations omitted); *see also Randy Waugh/Waugh's Mobile Home Park v. Morgan Cnty. Emergency Med. Servs. Bd., Inc.*, 236 W. Va. 468, 474, 781 S.E.2d 379, 385 (2015) ("[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.") (citation omitted)).

petitioner's argument, as articulated by his counsel, was that the "controlling issue is [that section 61-7-14(d)(3)(B)] in the Business Liability Protection act says that we don't have to have the weapon out of view if it's an employment relationship and the issue is whether the employer can fire the employee." The circuit court held "[f]or an employee who has a firearm in his vehicle in an employer provided parking lot to receive the protection of the [Business Liability Protection Act], the firearm in question must be 'out of view[,]'" as provided in West Virginia Code section 61-7-14(d)(1)(B).

In its opinion the majority does not explain why this conclusion is wrong – or indeed, if it is – simply bypassing the issue with the sweeping pronouncement that "these subsections of the Act [§§ 61-7-14(d)(1) and 61-7-(d)(3)(B)] do not conflict but are directed at different protections of lawful gun owners' rights." The majority then goes on to find that the language of the latter provision, being clear, will be applied as written, without explaining why the language of the former, being equally clear, will be ignored. Although the majority's analysis is somewhat discursive – perhaps intentionally – the real holding of this case seems to be that although an employee may be prohibited from having a visible firearm in his or her vehicle pursuant to section 61-7-14(d)(1)(B), the employer is powerless per operation of section 61-7-14(d)(3)(B) to do anything when the employee flouts the prohibition.

The majority's attempt to obfuscate this holding, by finding that there are questions of material fact as to whether the petitioner's "initial hire with Guardian, or continued employment there following the incident in question, was conditioned on him agreeing to comply with its firearm policy[,]" is wholly unconvincing for two reasons. First, although the petitioner has consistently relied on § 61-7-14(d)(3)(B), he has never contended that his employment was conditioned on his agreement to comply with any company policy concerning firearms. Rather, both in his complaint and in his motion for partial summary judgment, his argument has been simply that the statute "protects an employee from discharge, where an employee has locked in his vehicle at work his lawfully owned firearms, *regardless of whether the firearm is concealed inside the vehicle*." (Emphasis in original). Second, there is not one scintilla of evidence in the record as to exactly what the company's policy was (on that point we have nothing more than the representation of counsel and a fleeting reference by the petitioner in his affidavit, *see* text *supra*); whether any such policy was made known to the petitioner at the time of his hiring or at any time during the course of his employment; or whether the petitioner's employment was conditioned on his agreement to abide by the policy. In short, the petitioner failed to raise any issue of disputed material fact on this issue and should not now be given the

opportunity to go back to the circuit court in order to discover (or create)[8] some evidence to support a whole new theory of his case.

To the extent that the majority is relying on what it continually refers to as the respondents' "admission" in its Answer to the Complaint, that "[the petitioner] was terminated for violation of a workplace policy prohibiting firearms on the property," I reject any contention that this was sufficient, standing alone, to create a disputed issue of material fact as to *whether the petitioner's employment was conditioned on his agreement to that policy.* Since the petitioner made no argument and put on no evidence as to this point, the respondents didn't either; the so-called "admission" referred to above is the sum total of the evidence. In this regard, this Court has held that

> "'[u]nsupported speculation is not sufficient to defeat a summary judgment motion.' *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). *If the evidence favoring the nonmoving party is 'merely colorable ... or is not significantly probative, ... summary judgment may be granted*.' *Anderson [v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986], 477 U.S. at 249–50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. (Citations omitted)."

*Williams,* 194 W. Va. at 61, 459 S.E.2d 338 (emphasis added). Here, it is a stretch to call the respondents' admission even "colorable," and it is certainly not "significantly

[8] I do not intend to suggest that the petitioner would fabricate evidence. Rather, should this case come before us again I anticipate another iteration of the "sham affidavit" argument that the majority studiously ignores in this appeal. *See supra* note 6.

probative" on the question of whether or not the petitioner even knew of the company's policy, let alone whether his employment was conditioned on his agreement to it.

In the Business Liability Protection Act, W. Va. Code § 61-7-14, the Legislature attempted to establish a workable balance between the rights of lawful gun owners, on the one hand, and business owners, lessees and employers, on the other. Somewhat lost in the shuffle was the right of customers, employees and invitees to shop, work, and visit in a safe environment, one that is free from the threat of deadly violence that may erupt when firearms are readily accessible on the premises. Completely lost in the shuffle was the right of private business owners to determine how best to maintain that safe environment, no matter what steps might be dictated by history or circumstance.

It can certainly be debated whether or not the statutory requirement that an employee's firearm be not only locked in his or her vehicle but also out of view, *see id*. § 61-7-14(d)(1)(B), has any meaningful relationship to safety interests. What cannot be debated is that the majority's opinion in this case makes the question moot in the context of employer-employee relationships; an employer can establish a rule consistent with the statute, but the employee doesn't have to follow it, which is absurd. *See Napier*, 214 W. Va. at 553, 591 S.E.2d at 111 ("'[i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by

the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)."). I do not believe this is what the Legislature intended, and it is my hope that in a future session that body will examine and resolve the clear tension – a tension which is apparent regardless of the majority's refusal to see it – between the two statutory provisions at issue here, West Virginia Code sections 61-7-14(d)(1)(B) and 61-7-14(d)(3)(B).

Let there be no mistake: I am a firm supporter of "the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use." W. Va. Const. art. III, § 22; *see also* U. S. Const. amend II. But I am also a firm supporter of the right of business owners to make responsible decisions as to how best to ensure a safe environment for their customers, employees, and invitees, without unwarranted governmental interference and/or oversight. In its opinion the majority has put a heavy thumb on the delicate statutory scale established by the Legislature; and further, the majority has disregarded the permissible scope of appellate review by allowing the petitioner to "save" his case by arguing and proving (if he can) a brand-new cause of action on remand. Other disappointed litigants may only hope for such unwarranted grace from this Court.

For the reasons set forth herein, I respectfully, and regretfully, dissent.